The appellant was convicted of murder and sentenced to twenty-five years' imprisonment for the killing of his wife. The State's evidence established that on August 21, 1980, Patricia Lynn Biggs died of three .38 caliber gunshot wounds inflicted by her husband.
Appellant testified that he and the deceased were married in 1965, divorced in the summer of 1969, and remarried to each other in the fall of 1969. Since then, they had separated and reconciled on many occasions. Each separation was at his wife's insistence. In April 1980, appellant's wife informed him that she wanted a divorce and asked him to move out. Appellant left, but shortly thereafter the parties reconciled when appellant's wife asked him to come home.
On August 18, 1980, the deceased once more told her husband that she had decided on a divorce, but the parties did not discuss the matter. Appellant testified that he searched for his wife for two days in an attempt to talk with her about their marital difficulties, but he was unable to find her. Then, on the afternoon of August 21, after Mrs. Biggs had come home from work, appellant walked into the bedroom where his wife was lying face down on the bed. He began to caress her by playing with her earrings and rubbing her legs. She turned over and asked him if he had thought any more about leaving. As she flipped over, her earring caught on appellant's finger. She then threw the other earring at her husband, told him she had made a mistake *Page 991 
in asking him to come home and stated that she did not love him and admitted that she had had an affair with another man and had lied about other affairs in the past.
Appellant said that his wife began to kick, scratch, and swing her fists at him. He attempted to hold her away but she kept moving toward him. In the scuffle, a pistol kept in the chest of drawers toppled onto a pile of clothes. Appellant testified that the next thing he remembered was firing three shots in rapid succession at his wife. He then called the police department.
The trial judge charged the jury on the elements of self-defense, and on the lesser-included offense of manslaughter, defined in § 13A-6-3, Code of Alabama 1975, as follows:
"(a) A person commits the crime of manslaughter if:
 (1) He recklessly causes the death of another person, or
 (2) He causes the death of another person under the circumstances that would constitute murder under section 13A-6-2; except, that he causes the death due to a sudden heat of passion caused by provocation recognized by law, and before a reasonable time for the passion to cool and for reason to reassert itself."
Appellant excepted to those portions of the court's oral charge explaining "provocation recognized by law." He claims that his wife's confession of adultery, taken together with her statements that she no longer loved him and wanted him to move out, were sufficient to engender in him a sudden heat of passion which reduced the killing from murder to manslaughter.
Appellant contends that the following parts of the court's charge erroneously instructed the jury that they could not consider the content of the deceased's statements to her husband just prior to the shooting in order to determine whether appellant was provoked to a heat of passion killing:
 "A killing in sudden passion excited by sufficient lawful provocation is manslaughter. Not because the law supposes this passion made the Defendant unconscious of what he was about to do and stripped the act of killing of an intent to commit the killing, but it is because that the passion disturbed the sway of reason.
 "The Court instructs you, however, that mere words, no matter how insulting, never reduces murder to manslaughter. Such provocation can in no case be less than an assault either actually committed or menaced under such circumstances as reasonably to convince the mind that the accused had cause for believing and did believe that he would be presently assaulted and that he struck, not in consequence of a previously formed design, general or specific, but he struck in consequence of passion suddenly aroused by the blow given or apparently about to be given.
". . .
 "The Court will further instruct you that in order to amount to legal provocation, the provoking act must have been of a nature calculated to influence the passions of the ordinary, reasonable man or woman. Whether such act as proved constitutes legal provocation is for the Jury to decide, but mere abusive or scurrilous words or insulting gestures are not sufficient provocation nor are minor or technical assaults or batteries not causing considerable pain or injury. . . ." (Emphasis added.)
After the jury had deliberated nearly two hours, they knocked and, in open court with all parties present, the foreman asked the following question:
 "FOREMAN: Judge, Your Honor, the question is — I just don't know how to phrase it. Concerning manslaughter that needs to be cleared up for us."
The trial court then re-instructed the jury, in substantially the same words it used during the main charge, on the elements of manslaughter. Appellant again excepted to the court's explanation of legal provocation.
This case presents us with the question, never squarely answered in this state, whether a wife's confession of unfaithfulness (as opposed to her husband's actually *Page 992 
finding her in the act of adultery) constitutes legally adequate provocation so as to reduce her killing by the husband from murder to manslaughter.
Although it is firmly established in Alabama that if one party finds his or her spouse in the act of adultery, the subsequent killing of either the offending spouse or the paramour is deemed, as a matter of law, to be caused by sufficient provocation. Hooks v. State, 99 Ala. 166, 13 So. 767
(1893). No reported Alabama case has been decided on the basis that a spouse's admission of infidelity may also constitute adequate provocation for a "heat of passion" killing. See Farrv. State, 54 Ala. App. 80, 304 So.2d 898, McNeill v. State,102 Ala. 121, 15 So. 352.
To constitute adequate legal provocation, it must be of a nature calculated to influence the passions of the ordinary, reasonable man. Other than discovered adultery, courts have reached different conclusions as to what factual situations are embraced within this doctrine. See Commentary, § 13A-6-3, Code of Alabama 1975. See also Annot., 93 A.L.R.3d 920 (1979).
The well established rule in Alabama is that mere words, no matter how insulting or abusive, cannot reduce a killing to manslaughter. Watson v. State, 82 Ala. 10, 2 So. 455 (1886). Appellant argues, however, that his wife's admission of past adulterous affairs, along with other degrading statements, constituted sufficient provocation to support a manslaughter verdict. Some other jurisdictions which follow the traditional rule that offensive statements are insufficient as a matter of law to support a finding of manslaughter do recognize that words conveying information may be sufficient provocation.People v. Rice, 351 Ill. 604, 184 N.E. 894 (1933); People v.Ahlberg, 13 Ill. App.3d 1038, 1041-1042, 301 N.E.2d 608 (1973);People v. Poole, 159 Mich. 350, 353, 123 N.W. 1093 (1909);Haley v. State, 123 Miss. 87, 85 So. 129 (1920); State v.Grugin, 147 Mo. 39, 48-62, 47 S.W. 1058 (1898); State v.Martin, 216 S.C. 129, 140, 57 S.E.2d 55 (1949).
However, in Commonwealth v. Bermudez, 370 Mass. 438,348 N.E.2d 802, 805 (1976), the Supreme Judicial Court of Massachusetts was confronted with a situation similar to the case at bar. In Bermudez the defendant was convicted of second degree murder for the killing of his wife. The defendant told the police that he had been separated from his wife for approximately three weeks; he went to see her; while there he went upstairs to see their baby; and, when he came downstairs, his wife, using an obscenity, told him, "I don't need you around here, I have got another man." After once more using an obscenity, she told him to get out. He then pulled a gun and shot her. The Massachusetts court held that the wife's intimation that she had committed adultery did not constitute sufficient provocation to support a manslaughter verdict. Citing Palmore v. State, 283 Ala. 501, 508, 218 So.2d 830 (Ala. 1969), that court stated:
 "Past adultery lacks the peculiarly immediate and intense offense to a spouse's sensitivities which has led courts to recognize present adultery as adequate provocation, and many courts have refused to recognize discovery of past adultery as sufficient provocation." 348 N.E.2d at 802.
In the case at bar, no adulterous affair was discovered at the time of the shooting nor was there any mention by deceased of any past specific act of adultery. Mere suspicion, belief or knowledge of past adulterous affairs will not change the character of a homicide from murder to manslaughter. State v.Ward, 286 N.C. 304, 210 S.E.2d 407 (1974). Because an admission of past adulterous affairs alone is insufficient to constitute adequate legal provocation, the oral charge given by the trial judge was without error.
It is further contended that the trial court erred by requiring appellant to present evidence warranting a finding of self-defense before statements made by deceased to appellant immediately prior to the shooting could be allowed into evidence. Appellant contends that said statements should have been allowed into evidence *Page 993 
without a showing of self-defense and bases this contention on C. Gamble, McElroy's Alabama Evidence, § 61.01 (10) (3d ed. 1977), which provides as follows:
 "Matters perceived by and communications to the subject person:
 "Matters observed by the subject person prior to the time in issue, including communications to him, which are calculated to cause him shock or mental disturbance are admissible as tending to show mental incapacity. The only qualification upon the admission of such evidence is that the matter of communication must be shown to have been perceived or heard by the subject person and must be shown relevant to have naturally and reasonably affected his mental poise to an extent as to have rendered him legally irresponsible while acting under its influence." McElroy at 121.
The record reflects that before appellant was allowed to testify to any statements made to him by the deceased, a predicate of self-defense had to be introduced. The trial court based this ruling on C. Gamble, McElroy's Alabama Evidence § 262.01 (9), which provides:
 "Design of victim in homicide or assault: "In a criminal charge of homicide or assault, in which the evidence warrants a finding that the accused acted in self-defense, he may prove, under the present exception to the hearsay rule, that prior to the alleged offense the victim threatened to injure him. Such is offered as being relevant to show that the victim was the aggressor. . . ."
Appellant argues that by being required to lay a predicate revealing a rational response to actual threatened aggression, he was frustrated in his attempt to show provocation giving rise to "sudden passion."
We cannot agree. The record reflects that, immediately prior to the shooting, the victim became enraged at appellant after he accidentally pulled an earring from her ear. She thereupon threw the other earring at appellant and began "kicking, scratching and swinging her fists" at appellant. It is evident that said actions were necessary to lay the necessary predicate of self-defense, but said actions by deceased were also relevant as to whether sufficient provocation existed to reduce the homicide from murder to manslaughter. As held previously, admission of past adulterous affairs by itself is insufficient provocation. The record reflects that after said actions by deceased were testified to by appellant, her statements that she made a mistake in asking him to come back, did not love him, and had engaged in past adulterous affairs were admitted into evidence.
While the statements of deceased should arguably have been admitted into evidence without a showing of self-defense by appellant, we hold that error, if any, was harmless in that said actions were relevant as to whether adequate provocation existed. A.R.A.P. 45. If there was any error in sustaining the original objections, which we do not concede, it was corrected by subsequently admitting the evidence by further questions to appellant. Tate v. State, 337 So.2d 13 (Ala.Cr.App. 1976).
We have carefully searched the record for errors injuriously affecting the substantial rights of the appellant and have found none. The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.