Alfred Floyd Shultz was indicted for the murder of one Mickey Michaels in violation of § 13A-6-2, Code of Alabama 1975. The jury found the appellant guilty of the lesser included offense of manslaughter and the trial judge set sentence at 10 years' imprisonment in the penitentiary.
At approximately 2:30 p.m. on July 15, 1984, the victim went to the residence of Jerry Smith and asked Smith for his help in moving a washing machine. Smith asked if the victim was still having trouble with the neighbors and he replied that it was all over. Smith, David Lee and Joe Sheppard then accompanied the victim, Mickey Michaels, to the house where the appellant lived with his grandparents, the Adkinsons. The washing machine was at the Adkinsons' house. Once they arrived, they saw Mr. Adkinson with a knife and the appellant with a gun. The victim and Adkinson began arguing and the victim, Michaels, pulled a knife on Adkinson.
The washing machine was then loaded on Smith's truck and Smith, Lee and Sheppard drove to the victim's trailer. While at the trailer, Smith saw the victim and his wife, Brenda, walking down the road arguing with the appellant, Shultz, and Adkinson. When the appellant got home the washing machine was unloaded and Lee, Smith and Sheppard left.
Around 8:30 p.m. on that same day, Sheppard went to the victim's trailer. Sheppard informed the victim that the roadway between the victim's trailer and the Adkinsons' house was blocked. The victim said he was going to unblock it.
Sheppard then left and drove to Lee's house which was nearby. Since the roadway was blocked, Sheppard drove into Adkinsons' yard to get around the roadblock. As Sheppard was walking back to the victim's trailer, he observed that the roadblock had been removed. He then saw Adkinson, the appellant and the victim arguing. Adkinson had a knife pulled and the appellant was pointing a shotgun at the victim. Sheppard did not see the victim with a weapon but did see his hand on his back pocket.
Sheppard attempted to get the victim to go home. The victim, Michaels, then said, "All of you son-of-a-bitches down here can go to hell, I am going to go back to the house." (R. 30). Sheppard then heard a gunshot and saw the victim fall to the ground. The appellant, Shultz, then said, "Nobody calls me a son-of-a-bitch and gets away with it." (R. 31).
Sheppard then went over to the victim and Adkinson remained with his knife out. The police were then called.
At approximately 9:35 p.m., Pike County Sheriff's Department Officers Douglas Wheeler and Frank Wheeler arrived at the scene. They observed the victim lying on the ground and several people standing around. A man yelled, "The boy that shot him is over there." (R. 4). The officers then saw the appellant run out of his house with a shotgun in one hand and his other hand held over his head. The officers yelled "halt" and the appellant was taken into custody.
The officers found a shotgun shell near the roadway and searched the area for weapons but were unable to find any. *Page 75 
Robert Bradbury, an officer with the Pike County Sheriff's Department went to the scene that night. He searched the area and could not find any weapons. He took photographs of the scene and no weapons showed up in the photographs.
Allen Boothe, the coroner for Pike County, arrived at the scene that night and determined that the victim, Michaels, was dead. He searched the body and the area around the body for weapons but could not find any weapons.
Harold Anderson, the Sheriff of Pike County, went to the scene. He stated a search for weapons was conducted but nothing was found.
At approximately 2:00 a.m. on July 16, 1984, Anderson received a call from the jailer that a knife had been found at the scene. The next morning he went to the scene and found a half open knife lying within a few feet of where the victim's body had been.
Dr. Leroy Riddick, a forensic pathologist with the Department of Forensic Sciences, performed the autopsy on the victim, Mickey Michaels. He determined the victim bled to death as a result of a shotgun wound to the chest. Riddick removed several pellets as well as the shotgun wadding from the body and gave them to Dale Carter, a firearms and tool marks examiner with the Department of Forensic Sciences.
Carter testified that he was unable to determine if the shotgun shell found at the scene had been fired from the appellant's shotgun. He stated that the projectiles given to him by Riddick were double naught buckshot. Carter estimated that the gunshot that hit the victim was fired at a distance of "eight to twelve feet."
Charles Brooks, a forensic laboratory analyst, received the knife found at the scene. There was no blood or tissue on the knife and he was unable to lift any fingerprints which were sufficient for comparison purposes.
B.A. Adkinson, the appellant's grandfather, testified that on July 15, 1984, he had returned to his house from Columbus, Georgia. He learned that his water had been turned off, his peas had been picked and his corn had been pulled. Adkinson saw the victim's wife picking his peas and he asked her not to do this.
A little while later, the victim's wife came back to the house and asked for her washing machine. Lee and the victim then came and got the machine. He saw Lee with a shotgun.
Adkinson then put some trash in the roadway to keep "them" from going back and forth. The roadway is Adkinson's driveway.
The Sheriff's Department came and Adkinson unblocked the roadway. Lee continued driving on this roadway so Adkinson blocked it again.
The victim and his wife came to the roadblock and told Adkinson to remove it. Adkinson saw Lee with a shotgun and Adkinson backed Lee towards the victim's trailer with his pocketknife. The victim, Michaels, then came at the appellant with a knife. The appellant, Shultz, left and returned with a shotgun. As the victim was about to cut the appellant, the appellant shot him.
Adkinson and his son, Bobby, found the knife at the scene after the officers left.
Edith Viola Minor, a neighbor of the Adkinsons, testified she saw the victim arguing with Adkinson on two occasions during the day of July 15, 1984. On both occasions, she saw the victim, Michaels, with a shotgun. Each of these times, the appellant persuaded his grandfather to quit arguing and go in the house.
 I
The appellant contends the State failed to present a prima facie case of manslaughter and, therefore, his conviction should be overturned.
Section 13A-6-3 (a)(2), Code of Alabama states:
"A person commits the crime of manslaughter if:
". . . *Page 76 
 "2. He causes the death of another person under circumstances that would constitute murder under section 13A-6-2; except, that he causes the death due to a sudden heat of passion caused by provocation recognized by law, and before a reasonable time for the passion to cool and for reason to reassert itself."
The appellant's contention is based on the ground that the State did not prove that the victim's death was "due to a sudden heat of passion caused by provocation recognized by law."
The appellant was indicted for the offense of murder. In the presentation of its case to the jury the State presented sufficient evidence to sustain a conviction of murder. However, during the presentation of the defense, the appellant brought out evidence that the appellant, Shultz, shot the victim as the victim, Michaels, was about to cut him. Based on this evidence, the trial judge charged the jury on the offense of murder and also on the lesser included offense of manslaughter.
The appellant contends that the evidence presented by him in his defense raised a reasonable doubt in the jury's mind that he was guilty of murder and, therefore, they chose to convict him of manslaughter. He states that his defense was based on self-defense and not on the theory of legal provocation.
As the trial judge stated in his oral charge, § 13A-6-3
(a)(2) is designed to cover those situations where the jury does not believe a defendant is guilty of murder but also does not believe the killing was totally justified by self-defense. (R. 173). The trial judge charged on the theory of self-defense as well as legal provocation.
 "To constitute adequate legal provocation, it must be of a nature calculated to influence the passions of the ordinary, reasonable man. Other than discovered adultery, courts have reached different conclusions as to what factual situations are embraced within this doctrine. See Commentary, § 13A-6-3, Code of Alabama 1975. See also Annot., 93 A.L.R.3d 920 (1979)."
Biggs v. State, 441 So.2d 989, 992 (Ala.Crim.App.), cert. denied, 441 So.2d 989 (Ala. 1983).
Therefore, as to what constitutes legal provocation is left to the trial judge's interpretation. See Commentary, § 13A-6-3, Code of Alabama 1975.
The following is a portion of the trial judge's charge on the issue of legal provocation.
 "Now, words, no matter how abusive, insulting, vile, scurrilous is not provocation. Insulting words coupled with abusive obscene gestures, so to speak, which do not amount to an assault that endangers life is not sufficient provocation. A minor technical assault which did not endanger life or inflict serious physical injury or inflict substantial and considerable pain would not amount to sufficient provocation. What are we talking about. Where death is caused from heat of passion caused by sufficient provocation must be an attempt by the deceased to inflict serious physical injury on the defendant under circumstances as would convince a reasonable person he is about to be injured. The killing then could be said to be the result of sudden provocation which will lower it to the crime of manslaughter." (R. 173).
We find the trial judge sufficiently defined legal provocation in his oral charge. Under the court's charge, the fact that the victim was about to cut the appellant before he shot the victim could constitute legal provocation. SeeRoberson v. State, 217 Ala. 696, 117 So. 412 (1928).
This court finds that the jury believed that this appellant had legal provocation for the victim's killing. However, they did not find the killing was justified by the doctrine of self-defense. Thus, the jury properly considered the issue of legal provocation and found the appellant guilty of manslaughter.
We hold that there was sufficient evidence from which the jury could conclude, by fair inference, that the appellant was guilty of manslaughter beyond a reasonable *Page 77 
doubt. Wiggins v. State, 354 So.2d 340 (Ala.Crim.App. 1978);Eddy v. State, 352 So.2d 1161 (Ala.Crim.App. 1977).
Therefore, we will not disturb this conviction on appeal.Hurst v. State, 397 So.2d 203 (Ala.Crim.App.), cert. denied,397 So.2d 208 (Ala. 1981).
The judgment of the trial court is due to be and is, hereby, affirmed.
AFFIRMED.
All the Judges concur.