Addie Nora Mae Shiflett was indicted for murder in violation of § 13A-6-2, Code of Alabama 1975. The jury found the appellant guilty of the lesser included offense of manslaughter. She was sentenced to serve seven years in the state penitentiary and ordered to pay $2400.00 in restitution.
The evidence presented by the State tended to show that on Tuesday morning, April 22, 1986 at approximately 8:00 a.m., the appellant's husband (Rayburn Shiflett), the victim in the case (Marquetta Davis), the victim's brother-in-law (John Larry Davis) and two other men began drinking and drove from Pisgah, Alabama (i.e., the Gray residence) to Rosalie, Alabama. They *Page 1057 
traveled to various places during the day including Gadsden, Alabama and Scottsboro, Alabama and consumed at least five quarts of liquor.
The victim, Mr. Shiflett and Mr. Davis had spent most of the preceding three or four days together drinking and driving around. At times during this period, the three were joined by the appellant, who did not drink. On Sunday night, the victim and Mr. Shiflett had surreptitiously left the Shiflett's house together, leaving the appellant, Mr. Davis and another man there. The appellant and the two men had then driven around in the car looking for the victim and Mr. Shiflett, but had been unable to find them. Eventually the two had returned. The victim was apparently having an affair with her brother-in-law.
On Tuesday, while the group was in Scottsboro, the victim threw a liquor bottle out of the window of a motel room the group rented. The police were called and the group was forced to leave. They then traveled from Scottsboro back to the Gray residence near Pisgah.
At approxmiately 10:00 p.m. that evening, the victim, Mr. Shiflett and Mr. Davis were seated in the front seat of Mr. Shiflett's car, which was parked in front of the Gray residence, when the appellant arrived. She was driven there by Barbara Lawhorn.
Ms. Lawhorn testified that the appellant had been looking for her husband all day and asked her to drive her to the Gray residence so that she (the appellant) could drive her husband home. Ms. Lawhorn testified that the appellant was not angry or upset with anyone but her husband when she arrived at the Gray residence and did not threaten the victim.
Mr. Davis, who was seated in the Shiflett vehicle, testified that, at some point after the appellant and Ms. Lawhorn drove up, the appellant reached through the window on the driver's side of the vehicle where he was seated and grabbed a half gallon bottle of whiskey he had sitting between his legs. She poured the whiskey out of the bottle and then broke it against the vehicle. She then walked around the vehicle to the passenger's side window next to where her husband was sitting and broke out the window.
The glass from the window flew into the front seat of the vehicle, cutting the victim on her face. The victim started yelling at the appellant because of the cuts and then an argument, apparently among all those present, ensued.
Mr. Davis testified that he saw the appellant "swing in the window . . . at [her] husband or Marquetta one," and the appellant's husband then got out of the car "to break all that up." Mr. Davis and the victim then got out of the car and the appellant and her husband were on the other side of the car engaged in an argument. Mr. Davis could not recall exactly what occurred thereafter.
Donna Gray testified that she came out of the house when the appellant arrived. She saw the appellant get out of Ms. Lawhorn's car with something in her hand which she later determined to be a hammer. After the appellant broke the whiskey bottle she advanced toward the victim with the hammer. Ms. Gray testified that the victim said, "what have you got against me? I am with him, I am with Larry [Mr. Davis]." The appellant broke the window out with the hammer and continued trying to hit the victim with it. The appellant's husband was trying to restrain the appellant and, when he got out of the car, they began arguing.
The victim got out of the car with her face bleeding and said, "Look what you've done to me."
A few minutes later the victim and the appellant began quarreling near the front of the appellant's husband's car. Eventually the two walked over to Ms. Lawhorn's car. The appellant reached into the car and picked up her purse. She got out of the car with her purse and then "went out towards the car, [with the victim] sort of going toward her." The appellant then unzipped her purse and Ms. Gray, fearing that she had a gun or knife, ran out to the appellant. *Page 1058 
Ms. Gray saw the appellant take a knife out of her purse and tried to talk her into dropping it.
The appellant began screaming that the victim "had some glass", but Ms. Gray never saw the victim with any glass. Ms. Gray tried to take the knife from the appellant, but the appellant pulled away and headed toward the victim. The two "scuffled" by the road at the end of the driveway. After the fight was finally stopped, Ms. Gray heard the appellant say she wished she "could have done a better job."
When the police arrived, they found the shattered car window glass, the broken whiskey bottle, the hammer and a purse, all approximately 30 to 40 feet from the road. A kitchen knife was found in the center of the driveway next to the road. There was no broken glass near where it was found.
The victim died of multiple stab wounds. She sustained four stab wounds: one to the back that penetrated the lung; one to the left chest that penetrated a vein at its junction with the heart; one to the right chest that penetrated the lung; and another to the right side that also penetrated the lung. She sustained numerous other cuts and scratches. The victim's blood alcohol level was .26 grams per cent.
The appellant corroborated the events leading up to her confrontation with the victim. She testified, however, that she never exchanged words with the victim as a result of the window breaking. She claimed that, after her husband got out of the car and while they were talking, the victim came from behind and grabbed her arm. Mr. Davis then took the victim away by the arm and told her to "cut it out."
The appellant testified that she then walked over to her husband who had gotten back in his car and they began arguing. As she started to back out of the car she saw a knife sticking out from under the car seat and picked it up and "put it next to [her] pocket book."
The appellant claimed that the victim then grabbed her again from behind. Mr. Davis then pulled the victim away toward the front of the vehicle. Donna Gray then came over to the appellant and the two walked to Ms. Gray's car. According to the appellant, as she reached into her purse to get a cigarette, Ms. Gray noticed the knife and asked the appellant to give it to her.
The appellant testified that, at this point, the victim came toward her wielding a piece of glass. The appellant threw up her hand and "something split it open." She claimed that the victim was on top of her and they fell on the ground and rolled over and over until they stopped fighting at the edge of the road. The appellant claimed that she had no memory of stabbing or cutting the victim.
 I
The appellant contends that the evidence presented at trial was insufficient to support her manslaughter conviction. She argues that the State failed to show that she acted "recklessly" or with legal provocation pursuant to § 13A-6-3, Code of Alabama 1975. We disagree.
The appellant was indicted for murder in violation of §13A-6-2, Code of Alabama 1975. She was found guilty of manslaughter, a lesser included offense.
We are of the opinion that the evidence presented by the State was sufficient to support a conviction of murder. Cumbov. State, 368 So.2d 871 (Ala.Crim.App. 1978), cert. denied,368 So.2d 877 (Ala. 1979). See Phelps v. State, 435 So.2d 158
(Ala.Crim.App. 1983); Scanland v. State, 473 So.2d 1182
(Ala.Crim.App. 1985), cert. denied, --- U.S. ---, 106 S.Ct. 602,88 L.Ed.2d 581 (1985). See discussion under "II", infra, re the issue of self-defense.
Since we believe the evidence was sufficient to support amurder conviction, it necessarily follows that there was sufficient evidence to support the lesser included offense of manslaughter under the theory that the appellant acted recklessly or with legal provocation. Section 13A-19(a)(3) and (4), Code of Alabama 1975.
Ala. Code § 13A-2-4(c) (1975) provides, "[i]f recklessness suffices to establish an *Page 1059 
element, that element is also established if a person acts knowingly and intentionally."
As for the appellant's argument that the "legal provocation" portion of the manslaughter statute is inapplicable, we must call the appellant's attention to Shultz v. State, 480 So.2d 73
(Ala.Crim.App. 1985), wherein this court recently addressed this very issue.
In Shultz, the appellant had been convicted of manslaughter as a lesser included offense of murder (with which he was originally charged). He based his case on a claim of self-defense under similar circumstances as those in the case at bar. The appellant in Schultz contended "that his defense was based on self-defense and not on the theory of legal provocation." Id. at 76.
We stated that " § 13A-6-3(a)(2) is designed to cover those situations where the jury does not believe a defendant is guilty of murder but also does not believe the killing was totally justified by self-defense." Id. (quoting the trial judge. R. 173).
In the case at bar, the trial judge charged this jury on the theory of self-defense as well as legal provocation. The question of whether the killing was done in the heat of passion was for the jury to decide. See Geter v. State, 468 So.2d 197
(Ala.Crim.App. 1985).
We hold, therefore, that there was sufficient evidence from which the jury could conclude, by fair inference, that the appellant was guilty of manslaughter beyond a reasonable doubt.Shultz, supra, and cases cited therein.
 II
The appellant contends that the State failed to prove "beyond a reasonable doubt that [she] was not acting in self-defense."
The State's evidence was sufficient to support the appellant's manslaughter conviction as herein noted. The appellant presented evidence which, if believed by the jury, might have supported a finding of self-defense. The resolution of this conflicting evidence was for the jury, and is not reviewable on appeal when the State proves a prima facie case.Townsend v. State, 402 So.2d 1097 (Ala.Crim.App. 1981); Pagev. State, 487 So.2d 999 (Ala.Crim.App. 1986); Davis v. State,450 So.2d 473 (Ala.Crim.App. 1984).
 III
The appellant contends that the trial court was in error when it instructed the jury: "Fourth, that in doing the act which caused the death of Marquetta Davis, the Defendant Shiflettwas not moved to act by sudden heat of passion caused by lawful provocation." (R. 237). (emphasis added) She contends that the instruction should have been "was moved."
No objection was made at trial to the court's oral charge, therefore, nothing is preserved for our review on appeal.Burkett v. State, 439 So.2d 737 (Ala.Crim.App. 1983). Allenv. State, 414 So.2d 989 (Ala.Crim.App. 1981) aff'd,414 So.2d 993 (Ala. 1982).
Moreover, the instruction was not erroneous. The judge was instructing the jury on the requirements for a murder
conviction at the time the statement was made. The instruction was, therefore, correct. Section 13A-6-2(b), Code of Alabama 1975.
For the above-stated reasons, this cause is due to be and is, hereby, affirmed.
AFFIRMED.
All the Judges concur.