The appellant was indicted for murder, in violation of §13A-6-2, Code of Alabama (1975). Thereafter, he was convicted of manslaughter, as a lesser-included offense, and sentenced to 20 years in the state penitentiary. He was also ordered to pay $9,489.30 in restitution and a crime victim compensation assessment of $25.
 I
The appellant argues that the jury's verdict of manslaughter was a compromised verdict, which was not supported by the evidence, and that it should, therefore, be reversed.
On the day of the offense, the appellant's wife was informed by the appellant's and her daughter that she had been raped by the victim. The appellant's wife then took a rifle and a pistol, which belonged to the appellant, to a neighbor's house. The appellant's wife returned to the neighbor's house later that day and retrieved the pistol. She and her daughter subsequently reported the alleged rape to the police. When the appellant came home that evening, his wife told him about the rape. The appellant's wife and his daughter testified that he became extremely upset. Later that evening, the appellant drove to the trailer of Billie Rachel Garner, a friend of the appellant. The victim had been riding with his brother-in-law in his brother-in-law's vehicle and had told his brother-in-law that he had been accused of raping the appellant's daughter. He further told his brother-in-law that he was planning to talk to the appellant and try to work things out. While driving around, they observed the appellant's vehicle parked at Billie Rachel Garner's trailer, so they turned around and returned to the trailer. The victim informed his brother-in-law that he was going to talk to the appellant. He knocked on the trailer door, entered, and, with his hand still on the doorknob, told the appellant that they needed to talk, but that he wanted to talk outside. The appellant stood up and fired six to seven shots at the victim. The victim began running out of the trailer, and the appellant pursued him. Garner testified that she asked the appellant if he had gone crazy and that she attempted to grab him. The appellant pursued the victim outside, telling him to run, and stating *Page 377 
that "I am going to kill you, you son of a bitch." The victim, while attempting to hide behind a car, told his brother-in-law that the appellant had shot him. Garner's brother, who was outside, began to wrestle with the appellant over his gun. The victim's brother-in-law started his vehicle and helped the victim into the car. He took the victim to the hospital. The appellant's wife testified that, when the appellant returned home, he told her that he had talked to the victim and that he had shot at him, but he stated that he did not hit the victim. He further stated that the victim had run like a rabbit.
The appellant testified at trial that, as he watched the victim walk outside of the trailer, he had observed the victim's hand go out of sight and believed that he was grabbing for a weapon. He thus presented the defenses of self-defense and insanity.
According to § 13A-6-3, Code of Alabama 1975:
 "(a) A person commits the crime of manslaughter if:
 "(1) He recklessly causes the death of another person, or
 "(2) He causes the death of another person under circumstances that would constitute murder under § 13A-6-2; except, that he causes the death due to a sudden heat of passion caused by provocation recognized by law and before a reasonable time for the passion to cool and for reason to reassert itself."
There is no dispute that the appellant caused the victim's death. Moreover, there was evidence presented from which a jury could conclude, by fair inference, that the appellant was guilty of manslaughter beyond a reasonable doubt. Wiggins v.State, 354 So.2d 340 (Ala.Cr.App. 1978). The jury could have reasonably concluded that the appellant recklessly caused the victim's death or was acting out of legal provocation, because he believed the victim to be reaching for a weapon.[1]
There was ample evidence that the appellant was familiar with the weapon that he used. It was his pistol, and the appellant presented evidence that he had been a decorated Vietnam soldier. Thus, the appellant must have perceived the risk involved in his conduct. See Dalton v. State, 488 So.2d 13, 15
(Ala.Cr.App. 1986). The appellant clearly acted recklessly by opening fire at the victim.
Moreover, there was sufficient evidence to refute the appellant's defense of self-defense and establish a prima facie case of manslaughter by legal provocation. Although the appellant claimed that he acted because he believed that the victim was reaching for a weapon, there was evidence that the victim was unarmed. " '[Section] 13A-6-3(a)(2) is designed to cover those situations where the jury does not believe a defendant is guilty of murder but also does not believe the killing was totally justified by self-defense.' Shultz v.State, 480 So.2d 73, 76 (Ala.Cr.App. 1985). Furthermore, 'the evidence regarding self-defense was conflicting, therefore it is a matter left to the jury to decide. Ex parte Johnson,433 So.2d 479 (Ala. 1983), Davis v. State, 450 So.2d 473
(Ala.Cr.App. 1984).' " Hill v. State, 516 So.2d 876, 882
(Ala.Cr.App. 1987). See also Shiflett v. State, 507 So.2d 1056,1059 (Ala.Cr.App. 1987).
Thus, this court found that the jury's verdict of first degree manslaughter was well supported by the evidence inHurst v. State, 397 So.2d 203, 206 (Ala.Cr.App.), cert. denied,397 So.2d 208 (Ala. 1981). In that case, the defendant shot the victim when he and his accomplice first entered the victim's apartment. There was evidence that the defendant's accomplice had been involved in an argument with the victim earlier that day and was returning to "straighten this out." The appellant had argued that the shooting was accidental, but the court held that the evidence supported the conviction of first degree manslaughter. *Page 378 
"[I]f the evidence presented at trial shows that death was caused by a pistol intentionally fired at the person killed, unless self-defense is proved, the offense is either murder or manslaughter in the first degree. Lanier v. State, 43 Ala. App. 38, 179 So.2d 167 (1965)." Weaver v. State, 402 So.2d 1099,1102-03 (Ala.Cr.App. 1981). See also Shiflett v. State,507 So.2d 1056, 1058-59 (Ala.Cr.App. 1987) (wherein this court stated that because "we believe the evidence was sufficient to support a murder conviction, it necessarily follows that there was sufficient evidence to support the lesser-included offense of manslaughter under the theory that the appellant acted recklessly or with legal provocation"). In the present case there was sufficient evidence from which the jury could, by fair inference, conclude that the appellant was guilty of manslaughter beyond a reasonable doubt. Wiggins v. State, supra.
 II
The appellant argues that the trial court erred in refusing to charge the jury on his requested charge No. 16, that he had no duty to retreat. The record indicates that the following occurred prior to closing arguments in the judge's chambers:
 "THE COURT: The record should show that the court is conducting a pre-charge conference with counsel and the attorneys have been furnished a copy of the court's purported oral charge. The court has informed counsel that defendant's requested jury charges No. 22, 23, 24, 25, 31, 33, 36, 38, and 42 are to be given by the court. And the court has further discussed with counsel whether or not the elements of retreat as it is involved in the doctrine of self-defense should be given to the jury, and I believe that it's the agreement of counsel — State and the defendant — that the court will not charge on retreat as an obligation of the defendant in this case.
 "The remainder of the defendant's written requested charges are denied and refused.
 "[DEFENSE COUNSEL]: Defendant would object to the court's refusing to give his requested charges No. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 17, 18, 19, 20, 21, 26, 27, 28, 29, 30, 32, 34, 35, 37, 39, 40, 41, 43, 44, 45, 46, 48, 49, 50, 51, 16, and 15."
Following the trial court's oral instructions to the jury, the trial court asked if there were any exceptions from the defendant and defense counsel responded, "No, sir."
Clearly the trial court was under the impression that both parties had agreed that the court would not charge the jury on the appellant's duty to retreat. Moreover, the appellant failed to adequately bring to the trial court's attention the fact that he was objecting on the failure to charge on duty to retreat. Although he cited the trial court's failure to give jury charge No. 16 in his list of objections to refused charges, this is not sufficient to preserve error pursuant to Rule 14, A.R.Crim.P. Temp. See Corbin v. State, 551 So.2d 429
(Ala.Cr.App. 1989); Bates v. State, 549 So.2d 601, 610-11
(Ala.Cr.App. 1989); Daugherty v. State, 527 So.2d 1364
(Ala.Cr.App. 1988).
 III
The appellant argues that the trial court erred in refusing to allow into evidence a conviction of the deceased for murder, which refusal was especially prejudicial because the appellant was pleading self-defense. The record indicates that the appellant attempted to admit evidence at trial that the victim had been convicted of murder in 1976, approximately 12 years prior to the present crime. There was no indication of any connection between the appellant and the circumstances of this offense, and the person or persons involved in the prior offense and the circumstances of that offense.
In Weaver v. State, 402 So.2d 1099 (Ala.Cr.App. 1981), this court held that a deceased's habit of " 'cutting people with a knife' " was inadmissible. This court stated:
 "In Shuler v. State, 56 Ala. App. 599, 324 So.2d 313, cert. denied, 295 Ala. 418, 324 So.2d 319
(1975), this court observed that inquiries concerning violent hostile acts *Page 379 
by a victim toward someone other than the appellant were not admissible.
 "In Gamble, McElroy's Alabama Evidence, § 63.01(3), (3d Ed. 1977) we find the following:
 " 'In some cases where the accused is relying on self-defense he will want to show that the victim had previously committed specific acts of violence toward other persons and that the accused knew of such acts. The purpose of such evidence will be to show the accused's reasonable apprehension of peril. The general rule is that such evidence is admissible if the person toward whom the violence was directed had a very close connection with the accused such that there would be reasonable apprehension of peril on the part of the accused. It is quite clear that such violence towards other persons is not admissible if it is remote in time or lacks any connection in circumstances with the accused.' [Emphasis added]
 "In the present case, the specific act shown by the appellant at a hearing out of the presence of the jury, occurred from one to ten years before the shooting in question, and only one incident involved a person who the appellant stated was related to him 'a little bit.' Therefore, under these circumstances, we believe that the court was correct in not permitting the appellant to show specific incidents of the victim's dangerous and violent nature. The evidence presented was remote in time and lacked any connection in circumstance with the appellant."
Id. at 1101. See also Langley v. State, 373 So.2d 1267, 1271-72
(Ala.Cr.App. 1979).
The trial court properly refused to allow the appellant to admit evidence of the deceased's prior conviction, as it was remote in time and lacked any connection in circumstance with the appellant.
 IV
The appellant alleges that the trial court erred in charging the jury on the element of self-defense pertaining to what the appellant reasonably believed at the time he acted, because the trial court charged that the test should be what a reasonable man believed, rather than what a reasonable man, suffering from the mental disease or defect of the defendant, would have believed at the time he acted.
However, this matter was not preserved for review. Although the appellant objected to a number of requested charges in his list cited above, see Issue II, he failed to state any grounds, in listing the refused instructions. He further stated that he had no exceptions following the trial court's oral charge. Therefore, he has failed to preserve this matter for appeal. See Rule 14, Alabama Rules of Criminal Procedure.
 " 'No party may assign as error the court's . . . failing to give a written instruction . . . unless he objects thereto before the jury retires to consider its verdict, stating the matter to which he objects and the grounds of his objection.' Rule 14, Temp.A.R.Cr.P. (emphasis added). Here, defense counsel made the following objection, 'We'd except, of course, to you not giving all of our written charges as being correct statements of the law, the ones you did not give.' Counsel 'failed to set forth the specific grounds for his objection.' Ex parte Johnson, 433 So.2d 479, 480 (Ala. 1983). See Matkins v. State, 497 So.2d 201, 202
(Ala. 1986). The reference to 'all of' his written charges as 'correct statements of the law' is simply not a specific ground of objection, especially in view of the fact that defense counsel submitted 33 charges, 18 of which were refused. While defense counsel is not required 'to deliver a discourse before the trial judge on the applicable law of the case,' Gardner v. Dorsey, 331 So.2d 634, 637 (Ala. 1976) (construing Rule 51, A.R.Civ.P.), he is required to direct the court's attention to the reason why a particular requested charge, which is at a minimum a 'correct statement of the law,' applies in a particular case. '[E]rrors by the trial court such as . . . refusals of written charges . . . should be brought to the attention of the trial court so that it *Page 380 
might cure such errors at that level.' Allen v. State, 414 So.2d 989, 992 (Ala.Cr.App. 1981), affirmed, Ex parte Allen, 414 So.2d 993
(Ala. 1982)."
Connolly v. State, 539 So.2d 436 (Ala.Cr.App. 1988).
Clearly by merely stating the number of the refused requested charges to which the appellant objected, the trial court was not put on notice as to the nature of the appellant's claimed error.
 V
The appellant argues that the trial court erred in refusing to allow the appellant's daughter to testify about being raped by the victim. The record indicates that the trial court allowed several witnesses, including Billie Rachel Garner, the victim's brother-in-law, the appellant's wife, and the appellant to testify to the fact that the appellant's daughter claimed to have been raped by the victim. There was also testimony that the appellant was informed of this fact prior to the shooting. An employee of the sheriff's department of Franklin County, Tennessee, testified that the appellant's wife and the appellant's daughter came to his office and reported the rape. An employee of the Tennessee Department of Human Resources testified that she took the appellant's daughter's statement concerning the alleged rape. The appellant's daughter testified that, on the night of the offense, the appellant questioned her about the alleged rape. She stated that she just cried and that the appellant asked his wife about the rape. She testified that the appellant then appeared to "go crazy." He put his camouflage clothing on, and left the house. She testified that she, with her mother, had previously reported the rape. The prosecutor then objected and the trial court instructed the jury as follows:
 "I sustain. Ladies and gentlemen, let me explain to you that this evidence is being admitted for a limited purpose. The issue before you and upon which this testimony is being admitted is the defendant's state of mind by virtue of what he had been informed. The evidence of an alleged rape is being admitted for your consideration, not with respect to whether that occurred or didn't occur. There is going to be no evidence before you whether it did or didn't. The issue being admitted in the case is for the defendant's state of mind. That is, whether he had or had not been told that it had occurred. So that's the reason that this is being admitted into evidence, and I will exclude the witness's remark in response to the question about whether it had occurred."
The appellant's daughter then testified that when her father returned, he was dressed in camouflage fatigues and his face was painted black and green. She stated that he told his wife and both of his daughters to leave the house. She further testified that the appellant then went up into the mountains, and she stated that he had a gun.
 "In a prosecution for murder it is permissible for the State to prove that the defendant entertained feelings of hostility toward the deceased, and for this purpose, the fact, but not the details or particulars, of recent former difficulties may be shown. Jones v. State, 17 Ala. App. 394, 85 So. 830 (1920).
 "In Judge McElroy's 'Law of Evidence in Alabama, 2d Ed. Vol. 1, page 107' it is stated:
 " 'In a series of opinions by the Court of Appeals, written by Judge Harwood, and apparently approved by the Supreme Court's denial of certiorari, the rule now seems to be established that the extent to which the facts (whether called details or some other name) of a former difficulty may be proved is committed in measurable degree to the discretion of the trial court.' (Citing cases)."
Davis v. State, 331 So.2d 813, 817 (Ala.Cr.App. 1976).
We find no abuse of discretion by the trial court in determining that the daughter could not testify as to the rape, except as to its effect on the appellant's state of mind. *Page 381 
 VI
The appellant argues that the trial court erred in refusing to affirmatively charge the jury that he should have been found not guilty by reason of mental disease or defect, pursuant to his requested jury charge No. 5. He further argues that the trial court erred in refusing to give his requested charge No. 51, which stated that, in the event of a verdict of not guilty by reason of mental disease or defect, there would be another hearing to determine whether or not the defendant should be committed to a mental institution. However, these issues are not preserved for review, pursuant to Rule 14, A.R.Crim.P.Temp. See Issues II and IV.
 VII
The appellant argues that the trial court erred in allowing a psychologist, testifying for the State, to give a medical opinion as to the appellant's sanity at the time of the shooting. The appellant argues that the witness, was not qualified to give a medical opinion, because he was not a medical doctor. Appellant cites Bailey v. State, 421 So.2d 1364
(Ala.Cr.App. 1982), for the general rule that only persons licensed to practice medicine as a profession can testify as experts on the question of insanity. In Bailey v. State, supra, the court held that a clinical technician who had "some practical experience in working with psychologists" was not qualified to testify as an expert on the question of insanity.Id. at 1368. However, the court noted that "[h]ad [the witness] been a psychologist properly qualified on the nature and extent of his knowledge, he should have been allowed to testify as an expert as to the results of the psychological tests he administered to the defendant. Anno., 78 A.L.R.2d 919 (1961); Alabama Code 1975, Section 12-21-160." Id.
 " 'Whether the qualification of the witness is sufficient is a question to be determined by the trial court, and the very nature of the test requires that its determination in particular cases be left to the sound discretion of the trial court, and which will not be revised on appeal, except for palpable abuse.' Jones v. State, 181 Ala. 63, 80, 61 So. 434 (1913); C. Gamble, McElroy's Alabama Evidence, Section 127.01(5) (3d ed. 1977)."
Id.
In the present case, there was testimony that the State's witness was a licensed Ph.D. in clinical psychology. There was also testimony that he had been a licensed clinical psychologist in Tennessee for approximately six and a half years. He further testified that he had had occasion to evaluate several hundred individuals who had been charged with crimes. He testified that he was currently serving as coordinator of forensic services at the mental health center. He stated that he had testified in criminal proceedings dozens of times in the past. Based on this testimony, we find no abuse of discretion by the trial court in allowing the witness to testify as an expert, concerning the appellant's sanity at the time of the offense.
AFFIRMED.
All the Judges concur.
[1] The evidence presented that the appellant was told about his daughter's rape was insufficient to establish adequate legal provocation for a "heat of passion" killing, encompassed under manslaughter. See Biggs v. State, 441 So.2d 989, 992
(Ala.Cr.App. 1983). See also Cox v. State, 500 So.2d 1296, 1298
(Ala.Cr.App. 1986).