LONG, Judge.
The appellant, Isaac Hafford, was charged with capital murder for killing William Leon Smith by stabbing him with a knife during the course of committing a theft. See § 13A-5-40(a)(2), Code of Alabama 1975. The appellant was found guilty of the lesser included offense of murder and was sentenced to 28 years in the penitentiary..
*1387 The state’s evidence tended to show that in November 1992, the appellant was employed with Boone and Sons, Inc., a construction firm that was renovating the Holiday Inn motel in Hoover, Alabama. He, along with some of the other construction workers, was living at the hotel while the renovation work was being done. While staying at the hotel, the appellant met William Leon Smith, a waiter at the hotel who also worked with the construction crew during the day.
On the night of November 23, 1992, Smith clocked out of work at 10:30 p.m. Later that night, Smith was found dead, lying in the middle of a road in Hoover, with a white-handled knife sticking out of his chest. Testimony indicated that the handle of the knife found in the victim bore the brand name “Dexter Russell” and that the knife was similar to those used in the kitchen of the restaurant at the Holiday Inn. Testimony elicited at trial indicated that because of their work at the motel, both the appellant and Smith had access to the knives in the restaurant kitchen; however, the manager of the restaurant did not recall ever lending the appellant a knife.
Robert McIntyre, a co-worker of the appellant’s and Smith’s, testified that he had seen a knife similar to the one that was used to kill Smith in the appellant’s room approximately two weeks before Smith’s death. McIntyre also stated that a few days before Smith was killed, he and several other construction workers were gathered in his room, when the appellant came in and indicated that he wanted a ride to Atlanta to visit his girlfriend. According to McIntyre, the appellant asked if anyone knew how to steal a car.
In early December 1992, the victim’s car was found by police officers in Washington, D.C., and on December 6,1992, the appellant turned himself in to the Washington, D.C., Metropolitan Police Department. The appellant 'gave a statement to the police, which was admitted at his trial. In this statement, the appellant told the police the following about the events of November 23,1992:
“I came down to the restaurant about 10:30 p.m. I talked to Lee at the cashier’s stand. I asked him could he go get me some drugs that night. He said ‘Yes, after work, as soon as I get off.’ When he got off I met him in the lobby of the Holiday Inn. We went outside together and got into his car. We went somewhere in Hoover and bought some cocaine. We went riding around getting high. I asked him about getting a large amount of cocaine. He replied yes he could. He drove back to the place that we were the first time. I sent him in with $150 to get an eight ball of cocaine. He only came out with a gram. I did some of that gram and I asked him where was the rest of my coke. That’s when we got into an argument about my money. We had been driving around when we were arguing. He pulled over and stopped at a stop sign. As we was arguing he pulled out a knife. We got into a scuffle. That’s when I took the knife and stabbed him. The car started to rolling backward' — he had his foot on the clutch and the car was in gear. I pulled up the brake and stopped the car. I ran to his side to get him out. His door was locked so I had to come back around to my side to unlock his door. Then I drug him out of the car. I got into the car and drove off. When I drove off I just drove to Birmingham. Then I got on Highway 20 and left out of Alabama. I drove straight here to Washington. I would sleep on the side of the road and in parking lots. When I got here I stayed in the car. This morning I came back to where I had the car parked and it was gone. I spend [sic] the day finding this place.”
(C. 209.)[1]
The appellant further stated that Smith pulled the knife from between the driver’s seat and the door of his vehicle and that he placed the knife in the appellant’s face. He told the police that the knife was the type “that they have in the restaurant kitchen” and that “[i]t was a big butcher knife with about ten inches to a foot blade on it and a white handle.” (C. 211; R. 535.) The appel *1388 lant indicated he was not injured, but that it “just freaked [him] out.” (C. 212; R. 538.)
In response to police questioning concerning the subject of his argument with Smith, the appellant stated:
“I was asking about my money. He was saying, T didn’t f — k up your money, the guy was short on drugs.’ Then I told him that he wasn’t that short to sell me a gram for a hundred and fifty dollars. Then Lee said to me, I can’t go back and get your money. I told him I think he f-d me out of my money. That is when he got the knife and said what are you going to do.”
(C. 213; R. 539)
The appellant’s trial testimony was similar to the statement that he gave the police. He testified that he met Smith while he was working at the motel in Hoover and that they became friends. The appellant stated that Smith had purchased drugs for him many times, but that he had never gone with Smith before the night of November 23, 1992. The appellant testified that on the night of November 23, he approached Smith, who was working in the motel restaurant, and asked him to buy some drugs and that Smith agreed. When Smith got off work, he and the appellant left the restaurant in Smith’s car. According to the appellant, they went to Smith’s home in order for Smith to change clothes. The appellant testified that he watched television while Smith changed clothes and made a telephone call to his “connection.” (R. 605.)
The appellant then testified as follows:
“And after he had changed from his work attire to his casual dress we went and picked up some drugs. I got a small sample, and I used it, and I asked him could he get me a larger amount since I was satisfied with the quality of what he had gotten for me then.
“Then we rode around. When he got that we went riding some more. And what I had asked him to get me was an eight ball, which was a hundred and fifty dollars. And so we went riding around. After he had got that for me, he had gave me a small amount of that, which is not nothing unusual, but then when I asked where was the rest of it at, because I paid for an eight ball and only had a gram, and so while we were riding we got in an argument about that. And I am asking, ‘Where is the rest of my money?’ and he said, ‘The guy is short.’ And I’m wondering, ‘Why, what that has to do with me? If he is short you should have my change or you shouldn’t have got nothing from him.’
“So we are riding around discussing that and we get into an argument over it, and as we are still in the Hoover community, and then we get into a struggle over the argument. He stops at a stop sign, and then he comes out from the left side of the car, which is between the driver’s seat and the door with a big knife, pointed it in my face. And he is asking me what am I going to do. And from the fear of a big knife just flashed out in my face, and we already in a heated argument, and from fear of that, I just responded to it only natural, to go for the knife, try to get it out of my face. And we struggling over the knife and wrestling around and tussling. And that is when he got stabbed. That is when I stabbed him.
“After the stabbing went on where it happened that it was a slope, slightly sloped area, so the car is slowly rolling back from the stop sign. So I’m trying to stop the car, nervous, trying to stop the car. And I finally decided to pull up the main break in the center of the car.
“And that is when I got out of my side and went around to his side. His door was locked, and I come back around to my side and unlocked his door and got him out of the car and just jumped in the car and took off.”
(R. 605-08)
The appellant stated that while he was staying at the motel he did, from time to time, have a knife in his room, but he testified that he used it for cleaning fish and that he returned it to the hotel kitchen whenever he was finished using it. He stated that the last time that he remembered having the knife in his room was approximately a month before Smith was killed. The appellant said that the knife that he used to clean fish *1389 resembled the knife that was found in the victim, but that it was smaller.
I.
The trial court charged the jury on the offense of capital murder and the lesser included offenses of murder and manslaughter. The trial court also charged the jury on self-defense. The appellant contends that the trial court erred in its charge to the jury on the offense of manslaughter. Specifically, he maintains that “[t]he instruction to the jury on the provocation element of manslaughter was misleading to the jury and prejudicial to the appellant because it excluded his factual situation from being considered manslaughter, as defined by the court.” (Appellant’s brief, p. 23.)
The trial court charged the jury on the offense of manslaughter as follows:
“Now, if you find from the evidence — the law further says that if you find from the evidence beyond a reasonable doubt that the defendant was moved to do the act which caused the death of William Leon Smith because of and due to a sudden heat of passion which was caused by provocation recognized by law and before there had been a reasonable time for the passion to cool and reason to reassert itself, then the crime would be manslaughter and not murder.
“Now, what does the law mean by passion? When the law speaks of passion it refers to those passions which an ordinary reasonable person would have. For the defendant to have acted in a sudden heat of passion he must have been so provoked by the deceased that he was deprived of the power of self-control. The state of mind of the defendant must be such that the suddenly excited passion suspends the exercise of judgment and dominates his self-control so as to exclude premeditation or a previously formed design.
“What do we mean by legal provocation? In order to amount to legal provocation, the provoking act must have been of a nature calculated to influence the passions of an ordinary reasonable person.
“In other words, the act or acts of the deceased must have been so outrageous and offensive as to cause an ordinary reasonable person extreme mental or emotional disturbance such to loose the bounds of normal restraint.

“Now, mere words spoken by the deceased and directed to the defendant, no matter how insulting, never produce sufficient legal provocation to reduce murder to manslaughter. Nor is a minor or technical assault sufficient legal provocation to reduce the charge from murder to manslaughter.

“However, a blow by the deceased inflicting considerable pain upon the defendant would be sufficient to reduce murder to manslaughter. I have talked about manslaughter, and I have used the term manslaughter. What are the elements of manslaughter?
“A person commits the crime of manslaughter if he causes the death of another person under circumstances which would otherwise constitute murder, but in doing the act which caused the death of the deceased, the defendant was moved by a sudden heat of passion brought about by lawful provocation and before there had been a reasonable time for the passion to cool and reason to reassert itself.
“So to sustain a charge of manslaughter in this case, the state, by the evidence, must prove beyond a reasonable doubt each of the following elements of the offense. First, that William Leon Smith is deceased. Second, that the defendant, Isaac Hafford, caused the death of William Leon Smith. And that he died as a result of the stabbing with a knife by the defendant. And, third, that the defendant acted with intent to cause the death of William Leon Smith. Fourth element is that the defendant acted due to á sudden heat of passion. That the sudden heat of passion was caused by legal provocation brought on by the deceased, and that a reasonable person so provoked would not have cooled off in time between the provocation and the fatal blow.”
(R. 780-784.) (Emphasis added.)
Following the court’s oral charge to the jury, the appellant’s counsel entered the following objection:
*1390 “Judge, when you were charging on manslaughter and the elements and what it would take as far as provocation to justify manslaughter you used an example, you said mere words was never enough. But then you said a severe blow would be enough. I think this would tend to possibly mislead this good jury insomuch as what we have here is a knife being ostensibly waved in someone’s face, which of course, would conceivably meet the standards for legal provocation. And we believe that is a misleading comment by His Honor.”
(R. 803-04) (Emphasis added.) The trial court overruled the objection.
During jury deliberations, the jury requested that it be recharged on the offenses of capital murder, murder, and manslaughter. The court essentially repeated its previous instructions. The appellant’s counsel again objected to the court’s charge on legal provocation, stating:
“Your Honor, Judge, we once again, if it please the Court, do except to your example in dealing with what provocation in regard to manslaughter, saying a severe blow would be enough insomuch as this was a noncontact provocation, to wit, a knife being waved in his face. And we feel like that would be confusing and prejudicial to the jury.”
(R. 816-17.) (Emphasis added.) The court overruled the objection.
The offense of manslaughter is defined in § 13A-6-3, Code of Alabama 1975, as follows:
“(a) A person commits the crime of manslaughter if:
[[Image here]]
“(2) He causes the death of another person under circumstances that would constitute murder under Section § 13A-6-2; except, that he causes the death due to a sudden heat of passion caused by provocation recognized by law, and before a reasonable time for the passion to cool and for reason to reassert itself’
“[Section] 13A-6-3(a)(2) is designed to cover those situations where the jury does not believe a defendant is guilty of murder but also does not believe the killing was totally justified by self-defense.” Shultz v. State, 480 So.2d 73, 76 (Ala.Crim.App.1985). See also Shiflett v. State, 507 So.2d 1056 (Ala.Crim.App.1987).
“To constitute adequate legal provocation, it must be of a nature calculated to influence the passions of the ordinary, reasonable man. Other than discovered adultery, courts have reached different conclusions as to what factual situations are embraced within this doctrine. See Commentary, § 13A-6-3, Code of Alabama 1975. See also Annot., 93 A.L.R.3d 920 (1979).”
Biggs v. State, 441 So.2d 989, 992 (Ala.Crim.App.1983).
Alabama Pattern Jury Instructions-Criminal, adopted by the Alabama Supreme Court, recommends that the following additional charge be added to the charge of manslaughter, if the evidence warrants:
“Mere words, no matter how insulting, never reduce murder to manslaughter. The provocation can, in no case, be less than an assault, either actually committed or menaced. The assault must be of such a nature aá”to reasonably to [sic] convince the mind that the accused had cause for believing, and did believe, that he would be presently assaulted and that he struck, not in consequence of a previously formed design, general or specific, but in consequence of the passion suddenly aroused by the blow given, or apparently about to be given.”
Alabama Pattern Jury Instructions-Criminal, 6-9 and 6-13 (ABICLE 1994 rev.). (Emphasis added.)
In the case of Cox v. State, “the appellant fired the first shot during a fight between his wife, the deceased’s ex-wife, and the deceased. The deceased then verbally threatened the appellant and made a movement towards him, whereupon the' appellant shot the deceased in the stomach, which resulted in his death.” Cox, 500 So.2d 1296, 1298 (Ala.Crim.App.1986). On appeal to this Court, the appellant argued that the evidence did not support his conviction for manslaughter because, he alleged, the evidence did not show that there was sufficient legal provoca *1391 tion. Thus, he maintained that his motion for a judgment of acquittal should have been granted. In assessing whether there was sufficient evidence of legal provocation, this Court stated:
“ ‘ “ ‘Mere words, no matter how insulting, never reduce a homicide to manslaughter. Manslaughter is the unlawful killing of a human being without malice; that is, the unpremeditated result of passion-heated blood — caused by a sudden, sufficient provocation. And such provocation can, in no case, be less than an assault, either actually committed, or menaced under such pending circumstances as reasonable to convince the mind that the accused has cause for believing, and did believe, he would be presently assaulted, and that he struck, not in consequence of a previously formed design, general or special, but in consequence of the passion suddenly aroused by the blow given, or apparently about to be given.’ ...” Reeves v. State, 186 Ala. 14, 65 So. 160, 161 [(1914)].’ Easley v. State, 246 Ala. 359, at 362, 20 So.2d 519, 522 (Ala.1944). Thus, the mere appearance of imminent assault may be sufficient to arouse heat of passion.”
Cox, 500 So.2d 1296, 1298 (Ala.Crim.App.1986). (Emphasis added.) We concluded that “[t]he jury could have reasonably found that the appellant believed that he was about to be assaulted, and therefore acted out of the heat of passion.” Cox, 500 So.2d 1296, 1298 (Ala.Crim.App.1986). (Emphasis added.)
In Shultz, supra, the appellant argued that the evidence was insufficient to support his conviction for manslaughter because, he maintained, the “State did not prove that the victim’s death was ‘due to a sudden heat of passion caused by provocation recognized by law.’” 480 So.2d 73, 76. The appellant’s theory was based on self-defense. In reaching the conclusion that the appellant’s conviction for manslaughter was supported by sufficient evidence, this Court found that the “trial judge sufficiently defined legal provocation in his oral charge. Under the court’s charge, the fact .that the victim was about to cut the appellant before he shot the victim could constitute legal provocation.” Shultz, 480 So.2d 73, 76. (Emphasis added.)
In this case, the trial court’s charge to the jury on the provocation element of manslaughter was incomplete and misleading. By charging the jury that “mere words ... never produce sufficient legal provocation to reduce murder to manslaughter” but that a “blow by the deceased inflicting considerable pain upon the defendant” could produce sufficient legal provocation, the trial court’s instructions could have incorrectly led a reasonable juror to believe that anything less than an actual, physical blow could not constitute legal provocation. This concern was sufficiently raised in the objection to the charge by the appellant’s counsel. If the jury had been charged correctly, and had believed the appellant’s version of the incident, it could have reasonably found the appellant guilty of manslaughter. The trial court’s instructions on the provocation element of manslaughter effectively foreclosed the possibility of the jury’s finding the appellant guilty of manslaughter, under the evidence presented.
The appellant raises other issues on appeal; however, in light of the above holding we find it unnecessary to address those issues. For the reasons stated above, the judgment of conviction is reversed and the cause remanded to the trial court.
REVERSED AND REMANDED.
All Judges concur.

. A portion of the statement was omitted from the transcribed portion of the record on appeal; however, the appellant's statement appears in its entirety at 208-16 of the clerk's'record.