The appellant, Johnny Ray Cox, was found guilty of the offense of manslaughter and sentenced to 25 years in the penitentiary pursuant to the Habitual Felony Offender Act. The deceased, Buddy French, was shot by a rifle in the presence of three witnesses. When the police arrived at the house, the appellant answered the door and stated that he did not know what had happened because he had been in the back of the house; however, he indicated that two black males had been present earlier. At trial, two witnesses to the incident, the deceased's ex-wife and the appellant's ex-wife, both testified. The decedent's ex-wife, Dianne Hall, testified for the State that the deceased and the appellant, having left the house several hours earlier, arrived with the deceased appearing to be intoxicated while the appellant appeared sober. The deceased started to leave and Ms. Hall followed him outside, afraid that he was going to take her car. An argument ensued and the appellant walked outside and calmed the deceased. The appellant then went to bed and the deceased entered the house and told Ms. Hall that she would have to leave; whereupon the appellant's wife and the deceased's sister, Brenda Cox, informed the deceased that Ms. Hall was not going to have to leave. Ms. Hall testified that during this conversation, she was on her knees by the couch and although she was not certain of the ensuing events, the deceased attempted to choke her and left red marks on her neck. Ms. Hall stated that at this point she heard Brenda Cox yell, "No Johnny" and saw Ms. Cox's arm going up in the air and then she heard a shot. The deceased stood up and challenged the appellant to "do that again." Ms. Hall testified *Page 1298 
that she again heard Brenda Cox yell "No Johnny" and another shot ensued. She stated that she observed the deceased grab his stomach and fall to the floor. Brenda Cox testified for the defense to substantially the same facts. She further testified that after the shooting, the appellant gave her the gun and told her to put it in the trunk of her car, which she did. She testified that later, when the police allowed her to leave the scene of the crime, the appellant told her to throw the gun away, so she threw it in a pond in Blount County, where it was later recovered.
 I
The appellant contends that the evidence presented against him does not support a conviction for manslaughter and that his motion for judgment of acquittal should have been granted by the trial court. Specifically, he argues that the evidence does not show that he acted out of the heat of passion. Nor was there a showing of the legal provocation necessary to arouse such heat of passion.
" ' "Mere words, no matter how insulting, never reduce a homicide to manslaughter. Manslaughter is the unlawful killing of a human being without malice; that is, the unpremeditated result of passion-heated blood — caused by a sudden, sufficient provocation. And such provocation can, in no case, be less than an assault, either actually committed, or menaced under such pending circumstances as reasonable to convince the mind that the accused has cause for believing, and did believe, he would be presently assaulted, and that he struck, not in consequence of a previously formed design, general or special, but in consequence of the passion suddenly aroused by the blow given, or apparently about to be given." * * *' Reeves v.State, 186 Ala. 14, 65 So. 160, 161." Easley v. State, 246 Ala. 359, at 362, 20 So.2d 519, 522 (Ala. 1944). Thus, the mere appearance of imminent assault may be sufficient to arouse heat of passion. "To constitute adequate legal provocation, it must be of a nature calculated to influence the passions of the ordinary, reasonable man. Other than discovered adultery, courts have reached different conclusions as to what factual situations are embraced within this doctrine." Biggs v. State,441 So.2d 989, 992 (Ala.Cr.App. 1983). As the commentary to §13A-6-3, Code of Alabama 1975, indicates, "What constitutes adequate legal provocation is not defined but remains, as previously, for judicial interpretation. The trial court must, as a preliminary question, decide as a matter of law whether offered evidence of provocation has any tendency to prove mitigating circumstances; when so construed and admitted, the questions of sufficient provocation and cooling time are then solely for the jury." This court has previously addressed this issue and held that "[w]hether heat of passion was sufficiently proven was for the jury to determine. Such has long been the law of this state, e.g. Ex parte Sloane, 95 Ala. 22, 11 So. 14
(1891)." Geter v. State, 468 So.2d 197, 198 (Ala.Cr.App. 1985).
Under the present facts, the appellant fired the first shot during a fight between his wife, the deceased's ex-wife, and the deceased. The deceased then verbally threatened the appellant and made a movement towards him, whereupon the appellant shot the deceased in the stomach, which resulted in his death. The jury could have reasonably found that the appellant believed that he was about to be assaulted, and, therefore acted out of the heat of passion. Conflicts in the evidence presented at trial are for the jury to resolve.Duncan v. State, 436 So.2d 883 (Ala.Cr.App. 1983), cert. denied,464 U.S. 1047, 104 S.Ct. 720, 79 L.Ed.2d 182 (1984). " 'A verdict of conviction will not be set aside on the ground of insufficiency of the evidence, unless, allowing all reasonable presumptions for its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince this Court that it was wrong and unjust.' " Duncan v.State, supra, at 904, quoting Johnson v. State, 378 So.2d 1164,1169 (Ala.Cr.App.), cert. quashed, 378 So.2d 1173 (Ala. 1979). *Page 1299 
 II
The appellant contends that the circumstantial evidence presented at trial would not support the finding of intent to the exclusion of any reasonable hypothesis that he was not guilty. He further alleges that there was "more than enough" evidence presented to the jury for it to have found that the shooting was accidental and that his conduct was not intentional.
According to § 13A-2-2 of the Code of Alabama 1975: "A person acts intentionally with respect to a result or conduct described by statute defining an offense, when his purpose is to cause that result or engage in that conduct." The requisite intent in a murder charge "may be inferred from the character of the assault, the use of a deadly weapon, and all other attending circumstances surrounding the death of the deceased."Swann v. State, 412 So.2d 1253, 1359 (Ala.Cr.App. 1982). "The killing in this case was not accidental. A killing is not accidental when the act causing death is done intentionally.Lewis v. State, 96 Ala. 6, 10, 11 So. 259 (1891). Any contention that the death was accidental 'ignores the nature of the enterprise that the defendant . . . [w]as engaged in.'Sanders v. State, 16 Ala. App. 511, 513, 79 So. 504 (1918)."Phelps v. State, 435 So.2d 158, 165 (Ala.Cr.App. 1983). It cannot be said that the appellant failed to perceive that the deceased's death might result if he was shot by the appellant. See Quates v. State, 439 So.2d 199, 202 (Ala.Cr.App. 1983).
Furthermore, the State presented attendant circumstances that tended to show the appellant's intent and guilty conscience, among them his instructions to his wife to dispose of the gun in a pond near her parents' house and his lie to the police indicating that two black men had been there earlier and were responsible for the killing. The State's evidence concerning the events of the offense is sufficient to show that the appellant intended or realized the consequences of his actions; therefore, the trial court acted properly in submitting this case to the jury. "Where there is evidence from which the jury may by fair inference find the defendant guilty, the trial court should submit the case to the jury to determine the weight it will give the evidence, and this court should not disturb the verdict." Giles v. State, 440 So.2d 1237, 1239
(Ala.Cr.App. 1983).
 III
The appellant contends that there was a reasonable theory from the evidence to justify the charge of criminally negligent homicide and that the trial judge should have charged the jury on that offense. The appellant's defense submitted that the shooting was accidental and, therefore, he contends that an accidental killing may support a conviction for criminally negligent homicide. While it is true that the "safer" practice is to charge upon all degrees of homicide, Silvey v. State,485 So.2d 790, 793 (Ala.Cr.App. 1986), the appellant failed to properly preserve this issue for appellate review, because no exceptions or objections were timely made. In the present case, when the court finished giving its charge to the jury and asked if there were any exceptions, the defense counsel responded that he had none. Under Rule 14, Alabama Temporary Rules of Criminal Procedure, the burden is on the defendant to advise the trial judge of his objections to the jury charge, stating his grounds, before the jury retires. Averette v. State,469 So.2d 1371, 1376 (Ala.Cr.App. 1985). Matters which are not objected to at the trial level cannot be considered for the first time on appeal. Moore v. State, 415 So.2d 1210, 1217
(Ala.Cr.App.), cert. denied, 459 U.S. 1041, 103 S.Ct. 459,74 L.Ed.2d 610 (1982); Ex parte Washington, 448 So.2d 404, 406
(Ala. 1984); Singletary v. State, 473 So.2d 556, 576
(Ala.Cr.App. 1984); Johnson v. State, 421 So.2d 1306, 1311
(Ala.Cr.App. 1982).
 IV
The appellant argues that the three prior convictions used by the State were improperly raised for both purposes of impeachment and purposes of enhancement under the Habitual Felony Offender Act. Specifically, *Page 1300 
the appellant claims that the burden is on the State to prove that the convictions were not youthful offender convictions.
As to these prior convictions used for purposes of enhancement, the record indicates that the appellant was sentenced pursuant to five previous offenses in 1973, and, as the trial judge indicates, the appellant was 21 years old at that time. Furthermore, this court has recently stated, per Presiding Judge Bowen, "[y]outhful offender rights under a prior conviction cannot be raised at the sentencing hearing of a habitual felony offender but may be challenged by a petition for writ of error coram nobis. Jones v. State, 431 So.2d 1367,1372 (Ala.Cr.App. 1983), followed in Ex parte Scott,460 So.2d 1371, 1374 (Ala. 1984)." Goodwin v. State, [Ms. 6 Div. 55, September 9, 1986] (Ala.Cr.App. 1986).
As to these prior convictions used for the purpose of impeachment, the trial court ruled that two of the five previous convictions were not for crimes involving moral turpitude and thus could not be used for purposes of impeachment; however the other three convictions were appropriate. We cannot find any authority to indicate that the State bears the burden of proving that the convictions are not youthful offender convictions. Even though "it has been held that a juvenile court adjudication cannot be introduced to impeach a witness even if the adjudication was for a crime involving moral turpitude," C. Gamble, McElroy's AlabamaEvidence, § 145.01(4) (3d ed. 1977), the Alabama Supreme Court has indicated that where the record does not disclose whether the conviction or adjudication against the appellant was under the statutory provision precluding an adjudication in the juvenile court from being treated as a "conviction", it has not been shown that the trial court erred in overruling the appellant's objection to evidence showing his prior convictions. Crenshaw v. Alabama Freight, Inc, 287 Ala. 372,252 So.2d 33 (Ala. 1971). "In the absence of a showing that the adjudication against [the party was under such] statute, no reason appears to hold that the evidence here complained of was not admissible." Id. Although Crenshaw is a civil case, the reasoning therein is appropriate to the case at bar in that there is no legal presumption that a conviction wherein application for youthful offender has been made is presumed to have been granted. The previous Alabama case law tends to indicate that it is incumbent upon the defense to raise the allegation that the previous offense should have been inadmissible under the protective statute for youthful offender adjudication. Once the defense has raised this contention, it is incumbent upon the State to rebut it. In evaluating a claim brought against the introduction of evidence of a prior adjudication as a youthful offender, this court initially determines whether the movant has standing to prohibit the other party from delving into a juvenile record. See Thompsonv. State, [Ms. 6 Div. 799, April 8, 1986] (Ala.Cr.App. 1986);Lynn v. State, 477 So.2d 1365 (Ala.Cr.App. 1984), reversed,477 So.2d 1385 (Ala. 1985); Hammac v. State, 44 Ala. App. 459,212 So.2d 849 (Ala.Cr.App. 1968). "[W]e note that the Supreme Court in Davis v. Alaska, 415 U.S. 308 at 319, 94 S.Ct. 1105 at 1111,39 L.Ed.2d 347, recognized the State's interest in protecting and preserving the anonymity of a juvenile offender," Hunt v.State, 453 So.2d 1083, 1087 (Ala.Cr.App. 1984); however, under certain circumstances, "we think that the State's policy interest in protecting the confidentiality of a youthful offender's record must yield to the public's right to the integrity of the judicial system." Thomas v. State,445 So.2d 992, 995 (Ala.Cr.App. 1984) (wherein a guilty plea as a youthful offender was admitted to contradict the witness's testimony that he did not commit that offense). See also Thompson v.State, [Ms. 6 Div. 799, April 8, 1996] (Ala.Cr.App. 1986) (wherein the trial court properly denied the appellant's motion for mistrial upon the State's impeachment of the appellant by reference to a youthful offender conviction, when the record was not clear that the impeachment was made by reference to a youthful offender conviction and *Page 1301 
the trial judge acted promptly by instructing the jury to disregard the testimony).
In this case, the appellant made no claim that he was granted youthful offender status. He merely asserts that it is the State's burden to prove that these offenses were not youthful offender convictions. The appellant cites no authority for this claim, nor do we find any support for the argument.
AFFIRMED.
All the Judges concur.