584 So.2d 869 (1990)
L.A. BENNETT, Jr.
v.
STATE.
CR 89-908.
Court of Criminal Appeals of Alabama.
November 30, 1990.
On Return to Remand May 17, 1991.
Rehearing Denied June 28, 1991.
Mac Borland, Jr., Dothan, for appellant.
Don Siegelman, Atty. Gen., and James F. Hampton, Sp. Atty. Gen., for appellee.
TYSON, Judge.
L.A. Bennett, Jr., was indicted for robbery in the first degree, in violation of § 13A-8-41, Code of Alabama 1975. He was found "guilty as charged in the indictment" *870 and was sentenced to 30 years in prison.
The record reveals that Shirley Reynolds worked the 11:00 p.m. to 7:00 a.m. shift at the Junior Food Store on Fortner Avenue in Dothan, Alabama, on January 29, 1989. She testified that she was cleaning the parking lot around 3:00 a.m., when a man drove up in a brown Toyota. He opened the door to the store for her and said, "You have the late shift." (R. 10) He asked for some cigarettes. She handed him the cigarettes and he stood there. She told him how much they cost, and the man stated, "No, I want the rest of it." (R. 11) He said he wanted the money in the cash register. Reynolds testified that she thought that he was joking. She testified that the man said, "Don't make me hurt you now, I mean it. I want the money." (R. 11) She gave him the money and he told her to get down on the floor or he would blow her head off. She got on the floor. She called the police immediately after he left.
Reynolds testified that during the robbery the man "had his hand in his pocket and he kept threatening me, and working that hand around in that pocket as he was threatening me, that he was going to hurt me. I thought he was going to jump over the counter, but he didn't." (R. 11) She stated that he had his hand in his back pocket as if he had a knife or a gun. She testified that she gave him approximately $140 because he had threatened her. Reynolds testified that she was able to determine the man's height from a measuring device on the door of the store. She described him to the police as a black man with light-colored eyes. He was approximately 5 feet, 8 inches tall and weighed around 130 pounds. He was wearing a gray, multi-colored, striped shirt, brown pants that were not fastened at the waist, and a white painter's cap. She identified the appellant from a photographic line-up and a physical line-up. She was also able to make a voice identification. In all instances, she identified the appellant as the person who robbed the store.
Ronald Hardin, an officer with the Dothan Police Department, testified that he stopped the appellant on the night of the robbery after a BOLO came over the radio. He let the appellant go because the clothing described on the report did not match the appellant's clothing. The appellant's brother testified that he saw his brother on the night of the robbery in the parking lot of the 500 Club. He testified that he left the club at 2:30 a.m. and that he did not know what time the appellant left the club. Timmy Lee Gordon testified that he was partying with the appellant outside the 500 Club. He testified that he did not know what time he saw the appellant. He also testified that the appellant's brother "left way ahead of him." (R. 104.) Willie Byrd Knight, Jr., one of the owners of the club, testified that he had seen the appellant at the club at some time, but that he could not pinpoint on what night he had seen him. Rebecca Knight, another owner of the club, testified that she did not see the appellant in the club on the night of the robbery. At that time, she had not seen him in three or four months.

I
The appellant contends that the evidence is insufficient to sustain the conviction because the State failed to prove that he was armed or that he represented himself as being armed. The law is well settled that it is not necessary to prove that the defendant displayed a weapon during a robbery or that he actually had a weapon to sustain a conviction of robbery in the first degree. Stewart v. State, 443 So.2d 1362 (Ala.Crim.App.1983); Miller v. State, 431 So.2d 586 (Ala.Crim.App.1983); James v. State, 405 So.2d 71 (Ala.Crim.App.1981). In order to sustain a conviction for first degree robbery, the accused need only represent in some manner that he has a deadly weapon or instrumentality. James. Thus, the test to be applied is a subjective one which focuses on the victim's reaction to the threats of the robber. Breedlove v. State, 482 So.2d 1277 (Ala.Crim.App.1985). The record reveals that the appellant's actions and threats instilled in the victim the reasonable belief that the appellant was armed with a deadly weapon. Thus, the *871 evidence was sufficient to sustain the conviction of robbery in the first degree.
The appellant also contends that there was insufficient evidence of identity in light of what he refers to as "alibi testimony". The victim's eyewitness testimony was sufficient evidence of identity. Any conflict in the evidence offered by the State and the evidence offered by the appellant went to the weight and not to the sufficiency of the evidence. The credibility of witnesses and the weight to be given the testimony is for the jury to determine. Johnson v. State, 555 So.2d 818 (Ala.Crim. App.1989); Harris v. State, 513 So.2d 79 (Ala.Crim.App.1987). Conflicting evidence presents a question for the jury, and a verdict rendered on conflicting evidence will not be disturbed on appeal. Johnson; Knight v. State, 548 So.2d 647 (Ala.Crim. App.1989).

II
The appellant contends that the trial court erred in allowing the prosecutor to impeach his own witness. There was never an adverse ruling on the appellant's objection. Thus, this issue was not preserved for review. Leonard v. State, 551 So.2d 1143 (Ala.Crim.App.1989); Cowgill v. State, 426 So.2d 517 (Ala.Crim.App.1982). Even if the issue had been properly preserved for review, there was no error in the admission of the testimony. The clear purpose of the prosecutor's line of questioning, although awkwardly done, was to refresh the recollection of the witness. See e.g., Walker v. State, 445 So.2d 955 (Ala.Crim. App.1983); Barnes v. State, 361 So.2d 390 (Ala.Crim.App.), cert. denied, 361 So.2d 396 (Ala.1978).
"A party may ask his witness, for the purpose of refreshing his memory or of showing that he has been put at a disadvantage by unexpected evidence, whether, at a certain time and place, he has not made certain statements inconsistent with his testimony on the stand, even though the admission of such inconsistent statements will injuriously affect the witness' credibility with the jury. While this cannot be done, when the purpose and only effect of such evidence is to impeach the witness; yet, the mere fact that the party expects the witness to admit the contradictory statements is not sufficient to show that the purpose and sole effect of the examination is to impeach the witness or to justify the exclusion of the testimony."
McMillian v. State, 268 Ala. 363, 365, 106 So.2d 244 (1958), quoting, White v. State, 87 Ala. 24, 26, 5 So. 829, 830 (1889).

III
The appellant next contends that the trial court erred in denying his request to review, for cross examination purposes, a police report prepared by Officer Tommy Merritt. The record reveals that Officer Merritt acknowledged that he prepared the police report in connection with the case and reviewed it prior to trial. He testified that he used the report to refresh his recollection as to some of his testimony.
In Johnson v. State, 555 So.2d 818 (Ala. Crim.App.1989), this court held that when a police investigator acknowledged at trial that he had prepared a report in connection with the case, a defendant's request to examine the report entitled him, at a minimum, to an in camera inspection of the document by the trial court, regardless of whether the investigator referred to the document during direct examination.
It appears from the record that the trial court did not review Merritt's report. Therefore, in accordance with Johnson, we remand this cause to the Houston Circuit Court so that the trial court can determine (1) whether Officer Merritt's report differed in any respect from his trial testimony, and (2) whether the nature of the report was such that "its production was necessary to ensure the fundamental fairness" of Bennett's trial. Johnson at 822. The trial court is instructed to make written findings of fact on these issues and to forward those findings to this court for further review within 45 days from date of this opinion.
REMANDED WITH INSTRUCTIONS.
All the Judges concur.

*872 ON RETURN TO REMAND
TYSON, Judge.
Pursuant to this court's opinion of November 30, 1990, the Circuit Court of Houston County conducted a hearing as directed on the question of whether Officer Merritt's report differed in any respect from his trial testimony and whether the nature of such was that its "production was necessary to ensure the fundamental fairness" of this appellant's trial. See Johnson v. State, 555 So.2d 818 (Ala.Crim.App.1989).
The circuit court filed its return with written findings as directed. The return reads as follows:
"ORDER
"The matter before the Court is the Remand of this case from the Alabama Criminal Court of Appeals to the Trial Court for an in camera examination by the Court of the offense report that Officer Merritt testified at trial was reviewed by him just prior to his testimony. A hearing thereon was conducted by the Court on January 11, 1991 where Officer Merritt was examined by the State, the Defense, and the Court, regarding which report he reviewed prior to trial.
"Officer Merritt testified that the only report he reviewed was that compiled by Investigator Jenkins. The State and the Defense stipulated that report was the same report provided to the Defense prior to the trial and discovery.
"Therefore, the Court finds that the Defendant had access to the actual report reviewed by Officer Merritt and, after an in camera inspection of said report, that same did not differ in any respect from his trial testimony and, although its production may have been necessary to insure that fundamental fairness, such was produced to the Defense well in advance of the trial.
"DONE AND ORDERED, this the 14th day of January, 1991.
 "/s/ Edward Jackson
 "Circuit Judge"
Based upon our examination of this record and return as hereinabove quoted, we find that the appellant's constitutional rights were not violated and that his trial provided "fundamental fairness." See Ex parte Pate, 415 So.2d 1140 (Ala.1981).
Based upon the foregoing, we hereby affirm this cause.
AFFIRMED.
All the Judges concur.