[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1212 
The appellant, Robert Mitchell McCollum, was convicted by a jury of manslaughter, a violation of 13A-6-3(a)(2), Ala. Code 1975, as charged in the indictment, for killing James Kittrell. He was sentenced to a 15-year split sentence, and was ordered to serve 1 year in the penitentiary and the balance on probation. He appeals from that conviction. The appellant has also petitioned this court for relief from his conviction under Rule 32, Ala.R.Crim.P., which petition is before this court.
While the appellant's case on direct appeal was pending before this court, the appellant filed a motion to stay the direct appeal and to remand the cause to the circuit court to allow that court jurisdiction over the appellant's Rule 32 petition. This court remanded the cause and requested a return to remand in 120 days, to allow the trial court to adjudicate the appellant's Rule 32 petition. A hearing was held on the appellant's petition. The trial court denied the petition and a return to remand was filed with this court. We will now consolidate the issues raised by the appellant on the authority of Barnes v. State, 621 So.2d 329, 333 (Ala.Crim.App. 1992).
The appellant raises four issues for review on direct appeal. Those issues are the following:
 1) Whether the trial judge's repeated interjections into the proceedings amounted to intervention which improperly confused the functions of judge and prosecutor, leading the jury to a predisposition of guilt.
 2) Whether the trial court's failure to charge the jury on criminally negligent homicide constitutes reversible error.
 3) Whether the trial court's charge that as a matter of law a stick is not a deadly weapon constitutes reversible error.
 4) Whether the trial court erred in not granting the appellant's motion for acquittal or appellant's motion for a new trial.
In his appeal from the trial court's denial of his Rule 32 petition, the appellant raises one issue for review: whether all persons selected for jury service must be selected from a fair cross section of the population of the area served by the court.
 I.
The appellant, in his direct appeal, first claims that the trial court abused its discretion by allegedly improperly assuming the role of prosecutor, and questioning several of the witnesses in an impartial manner, with an obvious bias in favor of the prosecution. He cites 23 places in the record where the judge allegedly questioned the witness on the stand in a prejudicial and pro-prosecution manner. Notably, the witness was a prosecution witness and was being questioned by the prosecution when the judge interceded. The following are the most egregious of the examples cited by the appellant. In this first exchange, the prosecutor was questioning Ashley Meadows, one of the witnesses to the *Page 1213 
shooting, regarding the placement of people just before the shooting occurred.
 "COURT: Were you in a position to see where [Dale Collum] was then? You had your hands full where you were, weren't you?
 "WITNESS: I believe that's where he was at. I'm pretty sure.
 "COURT: But at that point in time, somebody was sitting on top of you, [weren't] they?
 "WITNESS: Well, you know, when you [are] fighting somebody, you can still catch things out of a glimpse of your eye.
"COURT: Okay."
(R. 208.) Later, when the prosecutor questioned Mr. Meadows about the deceased's having threatened the appellant with a stick, the court also intervened.
"COURT: When did you first see the stick?
 "WITNESS: When [the deceased] come out of the car with it in his hand.
"COURT: Say that again.
 "WITNESS: When [the deceased] come out of the car with it in his hand.
 "PROSECUTOR: Did you say he came out of the car or come around the car?
 "WITNESS: He come out of the car and around the car.
 "COURT: Let me be sure that I understand this. You're [lying] under a car with [the deceased's brother, Gene] sitting on you, and you saw [the deceased] come out of the car with a stick in his hand. Is that what your testimony is?
"WITNESS: He come out —
 "COURT: You didn't see any stick in anybody's hand?
 "WITNESS: Yeah, I did see a stick in his hand. [Gene and I] never did go to the ground after he — We was still fighting up at the car on the ground.
 "COURT: So what you said just a few minutes ago was not right when you said [Gene] knocked you down and got on top of you, and you said that that was about right? Is that right or not?
 "WITNESS: That was after [the deceased] come out of the car with the stick.
 "COURT: You don't remember what happened out there that night, do you?
"WITNESS: Yeah, I remember what happened.
 "COURT: You don't remember a thing about that stick, though, do you?
"WITNESS: I done said about the stick."
(R. 211-12.)
Defense counsel did not object to any of these alleged errors during the trial nor did he request a mistrial based on the judge's questions. As this court has consistently held, "Absent an objection and an adverse ruling nothing is presented to this court for review. Review on appeal applies only to rulings of the trial court." Allred v. State, 390 So.2d 1109, 1114
(Ala.Crim.App.), cert. denied, 390 So.2d 1114 (Ala. 1980). Seealso, Phillips v. State, 527 So.2d 154 (Ala. 1988). Therefore, this matter is not preserved for review by this court.
The appellant did file a motion for a new trial with the trial court in this case, raising this issue, among others. The trial court denied the motion. However, the appellant failed to file a supporting affidavit with this motion. This court has repeatedly held, "Assertions in an unverified motion are bare allegations and cannot be considered as evidence or proof of the facts alleged." Blount v. State, 557 So.2d 1333
(Ala.Crim.App. 1989); see also, Similton v. State, 672 So.2d 1363
(Ala.Crim.App. 1995). Moreover, this delay in raising an objection amounts to invited error. "Under the doctrine of invited error, a defendant cannot by his own voluntary conduct invite error and then seek to profit thereby." Phillips v. State,527 So.2d at 156 (Ala. 1988).
The error of which the appellant complains is not preserved for review. Our holding here is not meant to indicate that this court condones the trial court's behavior in questioning these witnesses.
 II.
The appellant's second issue on direct appeal is that the trial court erred in refusing to instruct the jury regarding the lesser included offense of criminally negligent *Page 1214 
homicide. However, the appellant had already requested and received a jury instruction on self-defense.
 "It is a well accepted principle of law that a claim of self-defense necessarily serves as an admission that one's conduct was intentional. Harper v. State, 534 So.2d 1137 (Ala.Crim.App. 1988). . . . The decision to defend one's self, whether justified or not, is by its very nature a conscious and intentional decision."
Lacy v. State, 629 So.2d 688, 689 (Ala.Crim.App.), cert. denied, 629 So.2d 691 (Ala. 1993). Conversely, the offense of criminally negligent homicide is based upon the notion that the accused failed to perceive a substantial or unjustifiable risk when acting in a manner that killed another person; the conduct forming the basis of criminally negligent homicide is necessarily unintentional. See, § 13A-6-4, Ala. Code, 1975;Woods v. State, 485 So.2d 1243 (Ala.Crim.App. 1986). In addition, the Alabama legislature has already rejected the "imperfect defense" doctrine, which would allow a finding that a person was partly excused from an intentional or reckless killing because he acted under the mistaken belief that his action was justified due to self-defense, necessity, or the like. See, Comments to § 13A-6-4, Ala. Code, 1975; Lacy, supra.
Moreover, the appellant's actions do not warrant an instruction on criminally negligent homicide. The evidence adduced at trial shows that the appellant removed a rifle from his truck and stood while the victim approached him threateningly. As this court stated recently, in Marshall v.State, 668 So.2d 891 (Ala.Crim.App. 1995), the appellant's action of drawing the gun eradicates the possibility that the shooting was unintentional and thus criminally negligent.
 " 'In Robinson v. State, 441 So.2d 1045, 1047
(Ala.Crim.App. 1983), this court observed that a person who intentionally draws a gun in response to or in anticipation of a confrontation with another is certainly aware of the risk that the gun might discharge; therefore, he cannot be guilty of mere criminal negligence.'
 "Wiggins v. State, 491 So.2d 1046, 1048
(Ala.Crim.App. 1986). A charge of murder or manslaughter is not reduced to criminally negligent homicide by a claim of self-defense. Lovell v. State, 521 So.2d 1346 (Ala.Crim.App. 1987). . . ."
Under the facts of this case, the appellant was not entitled to a jury instruction on criminally negligent homicide.
 III.
The appellant's third claim on direct appeal is that the trial court improperly charged the jury that a stick is not a deadly weapon. The appellant claimed that he killed the victim, who was approaching him while carrying a stick, in self-defense.
This issue, however, is not preserved for review because the appellant failed to object to this instruction; in fact, the appellant's counsel stated plainly that he was "satisfied" with the instructions. (R. 448.) "Absent an objection to an alleged error and a ruling by the trial court, there is nothing for this Court to review." Showers v. State, 407 So.2d 169, 171
(Ala. 1981); see also, Biddie v. State, 516 So.2d 846 (Ala. 1987). Therefore, the appellant's contention that the judgment in this case should be reversed due to the "clearly erroneous" charge by the trial court is without merit.
 IV.
The appellant's final claim on direct appeal is that the trial court erred to reversal in not granting the appellant's motion for judgment of acquittal. The appellant claims that the State's evidence was insufficient to prove the necessary element of intent.
The evidence presented by the State at trial reveals the following facts. James Kitrell, the deceased, began fighting with Ashley Meadows inside Dale and Tammy Collum's trailer. (R. 143.) Nearly everyone in the trailer had been drinking alcohol. (R. 82.) In order to break up the fight, Dale got his .12 gauge shotgun, from which he later fired a warning shot. (R. 86, 145.) James pulled a knife out of his pocket. (R. 85.) James held the knife to Dale's throat when Dale asked him to stop fighting. (R. 132.) Gene Kitrell then took the knife from his brother, *Page 1215 
James, and held it to Dale's throat. (R. 85.) Dale asked Gene to help him break up the fight. (R. 112.) The appellant attempted to break up the fight. (R. 145.) Once the fight between James and Ashley broke up, James went to his brother's car. (R. 88.) Gene began fighting with Ashley inside the trailer. (R. 88.) After that fight broke up, Gene retreated to the car, where James was waiting. (R. 88.) The appellant went to his truck, drew his rifle, and fired another warning shot into air. (R. 146.) At this time, Ashley and Gene had begun fighting again. (R. 147.) James left the car and ran toward the appellant, who was standing by his truck. (R. 148.) James approached the appellant, holding a stick. (R. 90.) The stick was about two inches thick and about three feet long. (R. 116.) The appellant asked James several times to stop and to put the stick down. (R. 116.) James continued to approach the appellant with the stick. (R. 116.) When James "reared back" as if to hit the appellant with the stick, the appellant shot James. (R. 90, 148.) Gene knelt beside his brother, then picked up the stick and threw it into the pasture across from the trailer. (R. 148-49.)
As this court held in Weaver v. State, 402 So.2d 1099,1102-03 (Ala.Crim.App. 1981), the element of intent is not necessary to prove manslaughter; instead,
 " 'there must be either a positive intention to kill, or an act of violence from which, ordinarily, in the usual course of events, death or great bodily injury may be a consequence.' Harrington v. State, 83 Ala. 9, 16, 3 So. 425
(1887). See Trenor v. State, 354 So.2d 1180
(Ala.Crim.App. 1977), cert. denied, 354 So.2d 1185
(Ala. 1978).
 "Therefore, if the evidence presented at trial shows that death was caused by a [gun] intentionally fired at the person killed, unless self-defense is proved, the offense is either murder or manslaughter in the first degree. Lanier v. State, 43 Ala. App. 38, 179 So.2d 167
(1965).
 ". . . The evidence of whether or not the shooting was justifiable and in self-defense was in conflict and was a question for the jury to determine. Moore v. State, 364 So.2d 411
(Ala.Crim.App.), cert. denied, 364 So.2d 416 (Ala. 1978)."
This case is factually similar to Cox v. State,500 So.2d 1296 (Ala.Crim.App. 1986). The defendant in that case shot the victim, after the victim had exhibited violent tendencies, had verbally threatened the appellant, and had advanced upon the appellant. The jury found that defendant guilty of manslaughter. In Cox, this court held:
 " '[w]hether heat of passion was sufficiently proven was for the jury to determine. Such has long been the law of this state, e.g. Ex parte Sloane, 95 Ala. 22, 11 So. 14 (1891).' Geter v. State, 468 So.2d 197, 198 (Ala.Crim.App. 1985).
 ". . . Conflicts in the evidence presented at trial are for the jury to resolve. Duncan v. State, 436 So.2d 883 (Ala.Crim.App. 1983), cert. denied, 464 U.S. 1047, 104 S.Ct. 720, 79 L.Ed.2d 182
(1984).
500 So.2d, at 1298.
This court must review the evidence in a light most favorable to the State. As the Cox court stated,
 " 'A verdict of conviction will not be set aside on the ground of insufficiency of the evidence, unless, allowing all reasonable presumptions for its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince this Court that it was wrong and unjust.' Duncan v. State, supra, at 904, quoting Johnson v. State, 378 So.2d 1164, 1169 (Ala.Crim.App.), cert. quashed, 378 So.2d 1173 (Ala. 1979)."
Id. In this case, the evidence was more than sufficient to support a charge of manslaughter. The trial court's denial of the appellant's motion for a judgment of acquittal was supported by the State's evidence. This court affirms the judgment of the trial court.
 V.
The final issue in this case was raised by the appellant in a Rule 32 motion for post-conviction relief. The appellant claims that he is entitled to a new trial because one of the petit jurors was not qualified to sit on the jury because he resided outside the proper division of Tallapoosa *Page 1216 
County, and thus was selected and impaneled in violation of § 12-16-44, Ala. Code, 1975. After an evidentiary hearing on this matter, the trial court issued an order on March 15, 1995, finding that the error was untimely raised, as the juror's address was plainly printed on the strike list, and that the error, if any, was harmless. (C.Supp. 37-38.) This court agrees.
According to Fisher v. State, 587 So.2d 1027
(Ala.Crim.App.), cert. denied, 587 So.2d 1039 (Ala. 1991), cert. denied,Fisher v. Alabama, 503 U.S. 941, 112 S.Ct. 1486,117 L.Ed.2d 628 (1992), this court's inquiry must focus upon two items: first, whether the disqualification was based on a ground that would have resulted in the juror's being mandatorily excused as a petit juror, and second, whether the defense exercised due diligence in keeping the unqualified veniremember off the jury.Accord, Lollar v. State, 422 So.2d 809, 811 (Ala.Crim.App. 1982); Beasley v. State, 39 Ala. App. 182, 96 So.2d 693 (1957).
Section 12-16-44 Ala. Code, 1975, provides that the veniremembers must come from the territorial subdivision of the court requiring that jury, and no juror from outside the proper territorial subdivision is authorized to serve as a juror. However, the appellant here failed to exercise due diligence in challenging this juror, whose address was listed and was clearly not in the proper subdivision. "[T]he appellant has not shown himself free from fault or negligence in discovering this juror's disqualification." 587 So.2d, at 1036. See also,Watters v. Lawrence County, 551 So.2d 1011 (Ala. 1989); Tate v.State, 417 So.2d 608 (Ala.Crim.App. 1982).
Further, this court has specifically held:
 "[T]he mere fact that [a juror] resided in an adjoining county does not per se require a reversal of this cause. Nonresidency in such a case does not impute prejudice per se. . . . [T]here is no inherent prejudice attributed to a trial by a nonresident or nonresidents of the county in which the offense was committed."
Bufford v. State, 382 So.2d 1162, 1172-73 (Ala.Crim.App.), cert. denied, 382 So.2d 1175 (Ala. 1980). The appellant failed to show, as he must show in order to be entitled to a new trial, how he was prejudiced by the service of this nonresident juror. Ex parte Poole, 497 So.2d 537 (Ala. 1986).
Therefore, this issue is not appropriate for post-conviction review under Rule 32.2(a)(3), Ala.R.Crim.P., because the appellant could have, but failed to, raise this issue before the trial court before the jury was sworn. If the appellant had any question or objection to the jury venire, counsel was required to register that objection before the empaneling and swearing in of the jury. "Failure to make a timely objection waives the right to question the jury's qualifications, and appellant may not complain for the first time on motion for new trial nor on appeal to this court." Durden v. State,394 So.2d 967, 975 (Ala.Crim.App. 1980), cert. quashed, 394 So.2d 977
(Ala. 1981). Accord, Fisher, supra.
For the foregoing reasons, this court affirms the judgment of the trial court as to both the appellant's direct and his post-conviction appeals.
AFFIRMED.
All the Judges concur.