[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1191 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1192 
Demetrius McNish was convicted of 13 counts of first-degree theft of property, violations of § 13A-8-3, Ala. Code 1975 (cases CC-97-247, CC-97-249, CC-97-251, CC-97-253, CC-97-257, CC-97-259, CC-97-261, CC-97-263, CC-97-265, CC-97-267, CC-97-289, CC-97-291, and CC-97-293); 13 counts of conspiracy to commit first-degree theft of property, violations of §§ 13A-4-3 and 13A-8-3, Ala. Code 1975 (cases CC-97-246, CC-97-248, CC-97-250, CC-97-252, CC-97-256, CC-97-258, CC-97-260, CC-97-262, CC-97-264, CC-97-266, CC-97-288, CC-97-290, and CC-97-292); and one count of second-degree theft of property, a violation of § 13A-8-4, Ala. Code 1975 (case CC-97-255). The trial court sentenced him to serve ten years in prison on each of the first-degree theft convictions and five years in prison on each of the conspiracy convictions and the second-degree theft conviction.[1]
Doris McNish was convicted of seven counts of first-degree theft of property, violations of § 13A-8-3, Ala. Code 1975 (cases CC-97-269, CC-97-271, CC-97-273, CC-97-275, CC-97-277, CC-97-279, and CC-97-281); and seven counts of conspiracy to commit first-degree theft of property, violations of §§ 13A-4-3 and 13A-8-3, Ala. Code 1975 (cases CC-97-268, CC-97-270, CC-97-272, CC-97-274, CC-97-276, CC-97-278, and CC-97-280). The trial court sentenced her to serve five years in prison for each of her convictions.[2]
Rosalyn McNish was convicted of two counts of first-degree theft of property, violations of § 13A-8-3, Ala. Code 1975 (cases CC-97-283 and CC-97-285); and two counts of conspiracy to commit first-degree theft of property, violations of §§ 13A-4-3 and 13A-8-3, Ala. Code 1975 (cases CC-97-282 and CC-97-284). The trial court sentenced her to serve five years in prison for each conviction.[3]
In June 1995, Willie Joe Brown, a resident of Pike County, Alabama, won *Page 1193 
$14,000,000 in the Florida lottery. Shortly thereafter, Demetrius telephoned Mr. Brown's home and talked to Stephanie Brown, Mr. Brown's wife. Demetrius told her that he represented "a lot" of lottery winners all over the county and that he thought he could help Mr. Brown manage his winnings to earn more money. Mrs. Brown spoke to Demetrius on the telephone on several occasions. On one occasion, he told her that he would be in the area where they lived and asked if he could come to their home. The Browns agreed, and Demetrius went to their house on June 25, 1995. Demetrius told the Browns that he was a consultant, and he gave them his business card. He also showed them newspaper clippings from when he had run for public office. Mr. Brown testified that he and Demetrius discussed a business venture by which Mr. Brown would give Demetrius money to purchase discounted civil judgments. Mr. Brown agreed to the venture and arranged for Mrs. Brown to meet Demetrius the following morning to set up a $50,000 account for Demetrius and his business, Executive Services. When Mrs. Brown arrived at the First Alabama Bank in Troy, Alabama, the following morning, Demetrius was there with his sister, Rosalyn. After Mrs. Brown had written the $50,000 check to Executive Services, Demetrius explained that Executive Services did not have an account at that bank, but his sister did. Therefore, he wanted to deposit the money into Rosalyn's savings account and later transfer the money to Executive Services' account. Mrs. Brown added Rosalyn as a payee, and Demetrius deposited the check. On that same day, $27,122.60 was withdrawn from Rosalyn's account. The defense introduced a receipt for a $27,122.60 certified check dated June 26, 1995, that was made payable to the Social Security Administration. "Executive Services" and "R. McNish" appeared on the remitter line of the receipt. Mr. Brown testified that he owed $27,122.60 to the Social Security Administration for the overpayment of Social Security benefits and that he had discussed this debt with Demetrius.
The Browns gave Demetrius 14 checks in addition to the initial $50,000 check.[4] The total amount of those checks was $218,400. Either Mr. Brown or Mrs. Brown identified their signature on each check. Both testified that the date, payee, amount, and memorandum lines were blank when they gave those checks to Demetrius. Two of the checks were payable to Rosalyn McNish, and the signature "Rosalyn McNish" appeared on the back of the check. Seven of the checks were made out to Doris McNish, Demetrius' and Rosalyn's mother, and the signature "Doris McNish" appeared on the back of the checks. Four of the checks were payable to Demetrius McNish, and the final check was payable to "Cash." The signature "Demetrius McNish" appeared on the back of these checks. One of the checks was dated May 20, 1995. However, Mrs. Brown testified that neither she nor her husband had a checking account before he won the lottery in June 1995.
The memorandum lines on two of the checks contained language indicating that the money was a loan. However, Mr. Brown denied that he had agreed to loan Demetrius money to use for personal and business expenses. Rather, he testified that the money from the checks was to be used solely for purchasing judgments. Mr. Brown testified that he never received any judgments from Demetrius and that Demetrius did not give him any proceeds from any judgments. He testified that he *Page 1194 
did receive two $1,000 cashier's checks from Demetrius, but he did not know what the money was for. Mr. Brown also received two checks from Demetrius that were written on Rosalyn's checking account and contained the signature "Rosalyn McNish." Both checks contained notations on the memorandum line that they were loan payments and both were returned for nonsufficient funds. Mr. Brown also received two checks that were written on the account of Cecilia A. Primm and contained the notation "loan payment" on the memorandum lines. However, Mr. Brown testified that he did not know Cecilia Primm and he had not loaned her any money. Both checks were returned because the account was closed. There was also testimony that Demetrius assisted the Browns in paying off existing bills and was involved in the purchase of their new home and automobile insurance. However, the extent of Demetrius' involvement in these transactions was not clear.
Mr. Brown telephoned Demetrius when he did not receive any money from him. He testified that he called Demetrius three or four times and left messages on Demetrius' voice mail. He also gave Demetrius the telephone number for his beeper, which had a toll-free telephone number and voice mail. Nevertheless, Demetrius never returned his telephone calls. Mr. Brown then went to Mobile to find Demetrius' office. He found the address where Demetrius had told him the business was located, but there was no such business there. Instead, he found a building attached to a hotel or a motel, but none of the McNishes worked there. Mr. Brown also went to Prichard to look for Demetrius. While there, he talked with Doris and told her that Demetrius was going to get into trouble over the checks. According to Brown, he was talking about the checks written on Rosalyn's account that had been returned for nonsufficient funds.
Mrs. Brown testified that, although her husband told her something about Demetrius using the money to buy judgments, she was not familiar with the terms of the agreement between him and Demetrius. Mrs. Brown also testified that she accompanied Demetrius to the bank on several occasions and gave him checks as her husband directed.
 I.
Rosalyn argues that her trial counsel rendered ineffective assistance. (Issue I in Rosalyn's brief to this court.) To prevail on an ineffective-assistance-of-counsel claim, an appellant must show that counsel's performance was deficient and that counsel's deficient performance prejudiced her. See Strickland v. Washington, 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Brown v. State, 663 So.2d 1028,1032 (Ala.Cr.App. 1995). In her motion for a new trial, Rosalyn merely alleged that her trial counsel rendered ineffective assistance because the trial court denied her motion for a continuance.[5] She did not point to any specific instances that she alleged constituted deficient performance, nor did she show how more time to prepare would have affected her attorney's performance. Thus, Rosalyn has not satisfied her burden of proof under Strickland, and is not entitled to relief on this claim.
 II.
Rosalyn also argues that the trial court erred when it did not grant a mistrial *Page 1195 
due to Mrs. Brown's contact with a member of the jury.[6] (Issue II in Rosalyn's brief to this court.) After a recess in the trial, Demetrius' attorney moved for a mistrial because Mrs. Brown had had contact with a juror during the recess. However, Rosalyn did not join in Demetrius' objection, and "[n]othing in the record indicates that the judge made a practice of treating an objection by one of the three defendants' counsel as being made by all three defendants." T. R. D. v. State,673 So.2d 838, 844 (Ala.Cr.App. 1995). Accordingly, she did not preserve this issue for our review.
 III.
Rosalyn further argues that the trial court erred in admitting the cancelled checks into evidence because the State allegedly did not establish a proper predicate and chain of custody for those checks. (Issue IV in Rosalyn's brief to this court.) At trial, Doris' attorney objected to the admission of the checks on improper predicate and chain-of-custody grounds. However, Rosalyn did not join in this objection. Therefore, she did not preserve this issue for our review.See T. R. D., supra.
 IV.
Next, Rosalyn argues that the trial court improperly instructed the jury on a defendant's right not to testify. (Issue VI in Rosalyn's brief to this court.) "No party may assign as error the court's . . . giving of an erroneous, misleading, incomplete, or otherwise improper oral charge, unless the party objects thereto before the jury retires to consider its verdict, stating the matter to which he or she objects and the grounds of the objection." Rule 21.3, Ala.R.Crim.P.; see alsoMcCollum v. State, 678 So.2d 1210 (Ala.Cr.App. 1995). Rosalyn did not object to the trial court's instruction on a defendant's right not to testify. Rather, she stated that she was satisfied with the trial court's instructions. Therefore, this issue is not properly before this court.
 V.
Demetrius and Rosalyn argue that there was a fatal variance between the allegations contained in the theft indictments and the evidence presented at trial. (Issue I in Demetrius' brief to this court and Issue V in Rosalyn's brief to this court.) This issue is not properly before this court. After the trial court instructed the jury, Doris amended her motion for a judgment of acquittal to include as a ground the allegation that a material variance existed. Neither Demetrius nor Rosalyn joined in this objection. Therefore, they did not properly preserve this issue for our review. See Biles v. State, 715 So.2d 878 (Ala.Cr.App. 1997) (holding that issues relating to a variance between the allegations contained in an indictment and the proof presented at trial must first be raised in the trial court); T. R. D., supra.
 VI.
Demetrius argues that the trial court erred in instructing the jury on both first-degree theft and conspiracy because the conspiracy charges arose from the same facts or course of conduct as the first-degree theft charges. (Issue II in Demetrius' brief to this court.) To the extent that Demetrius is arguing that the trial court improperly instructed the jury, he did not preserve this issue for our review. At trial, Demetrius did not object to the trial court's instructions. *Page 1196 
Therefore, he did not properly preserve this issue for our review. See
Rule 21.3, Ala.R.Crim.P.; McCollum, supra. To the extent that Demetrius is arguing that he was improperly convicted of both first-degree theft and conspiracy, this issue is not properly before this court. During the charge conference, Demetrius' counsel stated, "I believe he can be found guilty of conspiracy and theft." (R. 339.) "`A party cannot assume inconsistent positions in the trial and appellate courts and, as a general rule, will not be permitted to allege an error in the trial court proceedings which was invited by him or was a natural consequence of his own actions.'" Miller v. State, 668 So.2d 912, 916 (Ala.Cr.App. 1995) (quoting Hammers v. State, 661 So.2d 788 (Ala.Cr.App. 1994)). Because Demetrius attempts to assert a position that is not consistent with his position at trial, this issue is not properly before this court.
 VII.
Demetrius also argues that, even though the trial court ordered that he serve the sentences for the conspiracy convictions concurrently with his sentences for the corresponding theft convictions, his sentences for both conspiracy and first-degree theft amount to multiple punishments for the same offense. (Issue IV in Demetrius' brief to this court.) However, Demetrius' argument is based on the assertion that, under the facts of this case, he could not be convicted of both theft and conspiracy. As we noted in Part VI of this opinion, this position is not consistent with his position at trial. See Miller, supra. Therefore, this issue is not properly before this court.
 VIII.
Demetrius further argues that he should not have been convicted of multiple counts of conspiracy and theft because the evidence, at most, supported only one conviction for conspiracy and one conviction for theft. (Issues III and V in Demetrius' brief to this court.) However, he did not raise this issue before the trial court. Accordingly, he did not properly preserve it for our review. See Harris v. State,563 So.2d 9, 10-11 (Ala.Cr.App. 1989) (holding that the appellant waived a claim that his multiple convictions for child pornography arising from the same course of conduct violated double jeopardy principles).
Demetrius also argues that the trial court erred in charging the jury on 14 counts of theft. However, because he did not object to the trial court's instructions, he did not preserve this issue for our review. See
Rule 21.3, Ala.R.Crim.P.; McCollum, supra.
 IX.
Rosalyn finally argues that the trial court erred in denying her motions for a judgment of acquittal because the State allegedly did not present sufficient evidence to support her convictions. (Issue II in Rosalyn's brief to this court.) However, she did not properly preserve this issue for our review. At the close of the State's evidence, Rosalyn moved for a judgment of acquittal on the grounds that the State had not proved its case beyond a reasonable doubt and that the State had not proved venue. Rosalyn merely renewed her motion for a judgment of acquittal at the close of all of the evidence.
 "The issue of the sufficiency of the evidence is preserved for review by a defendant's motion for a judgment of acquittal that is entered at the end of the state's case, at the close of the evidence, see A.R.Cr.P. 20(a), or after the verdict is entered, see A.R.Cr.P. 20.3. The motion must state the ground that the state failed to prove a prima facie *Page 1197 case. See, e.g., Ex parte Maxwell, 439 So.2d 715
(Ala. 1983). A defendant may also challenge the sufficiency of the evidence when moving for a new trial under A.R.Cr.P. 24.1 or when moving for an arrest of judgment under A.R.Cr.P. 24.2. A.R.Cr.P. 20.3(c); see Pearson, 601 So.2d at 1123-24; Prather v. City of Hoover, 585 So.2d 257, 258 n. 1 (Ala.Cr.App. 1991)."
Zumbado v. State, 615 So.2d 1223, 1241 (Ala.Cr.App. 1993) (emphasis added). Because Rosalyn did not allege in her motions for a judgment of acquittal that the State did not prove a prima facie case of theft and conspiracy, the motions did "not squarely present to the trial court the issue of the sufficiency of the evidence; consequently, [they were] insufficient to preserve the issue for appellate review." Johnson v.State, 500 So.2d 69, 72 (Ala.Cr.App. 1986) (quoting Trone v. State,366 So.2d 379 (Ala.Cr.App. 1979)). Furthermore, Rosalyn did not specifically challenge the sufficiency of the evidence in her motion for a new trial. See Johnson, supra. Therefore, she did not properly preserve this issue for our review.
 X.
Demetrius finally argues that the evidence was not sufficient to support his theft convictions. (Issue VI in Demetrius' brief to this court.) Specifically, he argues that the State did not prove that he intended to deprive the Browns of their property and that, at the time he entered into the agreement with Mr. Brown, he did not intend to perform as promised. When reviewing the sufficiency of the evidence, we must view the evidence in a light most favorable to the State and determine whether there was evidence from which the jury, by fair inference, could conclude that the appellant was guilty beyond a reasonable doubt. SeeHale v. State, 654 So.2d 83 (Ala.Cr.App. 1994).
Section 13A-8-3(a), Ala. Code 1975, defines first-degree theft of property as the "theft of property which exceeds $1,000.00 in value." Section 13A-8-4(a), Ala. Code 1975, defines second-degree theft of property as "[t]he theft of property which exceeds $250.00 in value but does not exceed $1,000.00 in value, and which is not taken from the person of another."
 "A person commits the crime of theft of property if he:
". . . .
 "(2) Knowingly obtains by deception control over the property of another, with intent to deprive the owner of his property."
§ 13A-8-2, Ala. Code 1975.
 "`In a theft trial, intent is a question for the jury.' Seaton v. State, 645 So.2d 341, 343
(Ala.Cr.App. 1994). `Intent, . . . being a state or condition of the mind, is rarely, if ever, susceptible of direct or positive proof, and must usually be inferred from the facts testified to by witnesses and the circumstances as developed by the evidence.' McCord v. State, 501 So.2d 520, 528-529 (Ala.Cr.App. 1986), quoting Pumphrey v. State, 156 Ala. 103, 47 So. 156 (1908)."
French v. State, 687 So.2d 202, 204 (Ala.Cr.App. 1995), rev'd on other grounds, 687 So.2d 205 (Ala. 1996).
The State presented evidence that Mr. Brown agreed to give the appellant money for the sole purpose of purchasing discounted civil judgments. The Browns signed and gave Demetrius 14 blank checks. The amounts and payees on those checks were subsequently entered and the checks were presented for payment. The amounts of the checks totaled $218,400. Mr. Brown testified that he received only $2,000 from Demetrius. He testified that two other checks Demetrius gave him *Page 1198 
were returned for nonsufficient funds. Although Mr. Brown made several attempts to contact Demetrius after those checks were returned for nonsufficient funds, Demetrius did not return his telephone calls. When he went to the address Demetrius had given him for the business, that business was not at that address and none of the McNishes worked at that location. Accordingly, the State presented sufficient evidence from which the jury could have concluded that Demetrius intended to deprive the Browns of their property and that he did not intend to comply with the terms of the agreement at the time he entered into the agreement. Furthermore, any evidence of services that Demetrius may have provided to the Browns merely created a conflict in the evidence that also presented a question for the jury to decide. See Bennett v. State, 584 So.2d 869,871 (Ala.Cr.App. 1990) (holding that "[c]onflicting evidence presents a question for the jury, and a verdict rendered on conflicting evidence will not be disturbed on appeal"). Therefore, Demetrius' argument is without merit.
 XI.
Finally, Doris argues that the State did not present sufficient evidence to support her convictions for conspiracy and theft. (Issue IV in Doris' brief to this court.) Mr. Brown testified that he had met Doris on two occasions and that they just spoke and were friendly. He testified that Doris never made any representations to him. He also testified that Demetrius never discussed Doris working with him. Mrs. Brown testified that she had never met Doris and that she had seen her only once in a limousine with Demetrius when he had come to her house to see Mr. Brown. Mrs. Brown also testified that Doris never made any representations to her. The State presented seven checks that showed Doris McNish as the payee and that were signed "Doris McNish." However, the State did not present any evidence that Doris ever had any knowledge of the checks or that Doris actually signed the checks. A bank statement for a savings account owned by Doris and Rosalyn reflected deposits with dates and amounts that corresponded to the dates and amounts on some of the checks that the Browns had given Demetrius. However, nothing showed that Doris had any knowledge that the money was being deposited into the account or that she withdrew any of those funds. Therefore, the State did not present sufficient evidence to support Doris' theft and conspiracy convictions. See Stinson v. State, 631 So.2d 831 (Ala. 1992); Greer v. State, 563 So.2d 39 (Ala.Cr.App. 1990). Accordingly, we must reverse Doris' convictions and sentences and render a judgment in her favor.[7]
For the foregoing reasons, we affirm the trial court's judgment as to Demetrius McNish and Rosalyn McNish. However, we reverse the trial court's judgment as to Doris McNish and render a judgment in her favor.
CONVICTIONS AND SENTENCES OF DEMETRIUS McNISH AND ROSALYN McNISH AFFIRMED; CONVICTIONS AND SENTENCES OF DORIS McNISH REVERSED AND JUDGMENT RENDERED.
LONG, P.J., and McMILLAN, COBB, and FRY, JJ., concur.
[1] The trial court ordered him to serve his sentences as follows:
 "Case Nos. CC-97-246 and -247 to run concurrently, Case Nos. CC-97-248 and -249 to run concurrently, Case Nos. CC-97-250 and -251 to run concurrently, Case Nos. CC-97-252 and -253 to run concurrently, Case Nos. CC-97-256 and -257 to run concurrently, Case Nos. CC-97-258 and -259 to run concurrently, Case Nos. CC-97-260 and -261 to run concurrently, Case Nos. CC-97-262 and -263 to run concurrently, Case Nos. CC-97-264 and -265 to run concurrently, Case Nos. CC-97-266 and -267 to run concurrently, Case Nos. CC-97-288 and -289 to run concurrently, Case Nos. CC-97-290 and -291 to run concurrently, and Case Nos. CC-97-292 and -293 to run concurrently, but otherwise consecutively."
(C.R. 162-63.)
[2] The trial court ordered Doris to serve her sentences as follows:
 "Case Nos. CC-97-268 and -269 to run concurrently, Case Nos. CC-97-270 and -271 to run concurrently, Case Nos. CC-97-272 and -273 to run concurrently, Case Nos. CC-97-274 and -275 to run concurrently, Case Nos. CC-97-276 and -277 to run concurrently, Case Nos. CC-97-278 and -279 to run concurrently, and Case Nos. CC-97-280 and -281 to run concurrently, but otherwise consecutively."
(C.R. 3590.)
[3] The trial court ordered her to serve her sentences as follows: "Case Nos. CC-97-282 and -283 to run concurrently and Case Nos. CC-97-284 and -285 to run concurrently, but otherwise consecutively." (C.R. 3321.)
[4] None of the appellants were charged with taking the $50,000 from the initial check.
[5] Rosalyn also appears to argue that her trial counsel rendered ineffective assistance because the State did not provide timely discovery. However, she did not raise this claim in her motion for a new trial. Therefore, she did not properly preserve this issue for our review. See Marshall v. State, 629 So.2d 766 (Ala.Cr.App. 1993).
[6] Additionally, Rosalyn appears to argue that the trial court erroneously allowed the jury to separate. Because she did not present this argument to the trial court, she did not preserve it for our review. See McCollum v. State, 678 So.2d 1210 (Ala.Cr.App. 1995).
[7] Based on our decision, we need not address the remaining issues Doris raises on appeal. *Page 1199